## 36309. COMBUSTION ENGINEERING, INC. v. NORRIS.

NICHOLS; Justice.

Appellee Norris entered into an option to purchase agreement with the Mullite Company of America, a wholly owned subsidiary of appellant Combustion Engineering, Inc., giving appellant the right to purchase her approximately 200 acres of farm land in fee simple. This land comprised appellee's entire farm. The option provided that it was valid for two years, and that the total purchase price was $150,000.00 to be paid as follows: $15,000.00 upon the execution of the option agreement and $135,000.00 at the closing upon delivery of the general warranty deed. The option reserved to appellee the right to use all crop lands until the end of the 1977 crop year. The option also provided that appellant could enter upon the property during the life of the option in order to search for minerals, ores, metals, and oil. The option contract, by its terms, constituted the sole and entire agreement between the parties. Appellant gave appellee a check for $15,000.00, which appellee endorsed and deposited in the bank. When appellant exercised the option, it gave appellee a check for the balance of the purchase price.

Appellee used her land to grow peanuts, and an agricultural allotment was issued for her acreage as provided by the Agricultural Adjustment Act, 52 Stat. 31, 7 USCA § 1281 et seq. (hereinafter referred to as the Act). Neither the option to purchase nor the warranty deed specifically referred to the transfer of the peanut allotments assigned to appellee's farm. In March 1976, after executing the option to purchase, but prior to appellant's exercise of the option and appellee's final conveyance of the property, appellee transferred the peanut allotments to her brother for "love and affection." When appellant learned that appellee had made this transfer, it brought suit claiming that it was the rightful owner of the peanut allotments as purchaser of the farm, that the allotments should be returned to it, that it had suffered damages of $10,000.00 because of the transfer of the allotments, and that it was entitled to payment of attorney fees based on appellee's fraudulent transfer. Appellee answered and filed a counterclaim seeking $15,000.00 because appellant never conveyed this sum to her as consideration for the option agreement. Both parties moved for summary judgment, and the trial court entered judgment in favor of the appellee on all claims. Appellant appeals. This court reverses.

1. In regard to appellee's counterclaim that appellant did not pay her the full purchase price, the record is indisputably clear that appellee received two checks from appellant, one for $15,000.00 and one for $135,000.00, and that she endorsed and deposited both

checks. The trial court erred in granting appellee's motion for summary judgment on her counterclaim. Summary judgment on this issue should have been entered in favor of appellant.

2. The parties' dispute over the ownership of the peanut allotments is more complex. Appellant argues that the allotments were sold with the farm in the absence of some specific reservation of the allotments by appellee. Here the option and the warranty deed are silent as to the transfer of the allotments. Appellee argues, on the other hand, that the allotments are personal property and do not run with the land. Without some specific agreement indicating the seller's intent to convey the allotments, appellee argues, they are not affixed to the realty and do not pass with it. Appellee relies on *Balkcom v. Cross,* 216 Ga. 530 (118 SE2d 185) (1961), and *Conifer Farms, Inc. v. Brent,* 237 Ga. 42 (226 SE2d 585) (1976), for the propositions that a landowner acquires no vested rights in an allotment and that allotments are only trasferrable pursuant to federal law. Although these are well established rules concerning allotments, neither rule is dispositive of the issues in this case.

In order to resolve the issues presented, two separate yet closely related questions of law must be answered. These questions were impliedly answered when the trial court granted appellee's motion for summary judgment. The first question is: When an entire farm is sold upon which an agricultural allotment is in effect, does the allotment run with the land and pass to the purchaser of the land in the absence of a specific agreement to the contrary? The second question is: If a purchase option contract is entered into, may the owner of the land transfer the agricultural allotment for that land to a third party without liability to the holder of the option?

The first question has been answered affirmatively in several cases based on the following analysis. The County Agricultural Stabilization and Conservation (ASC) Committee allocates allotments to farms in the county pursuant to the provisions of the Act. See Allen v. David, 334 F2d 592 (5th Cir. 1964). The allotment is not made to the individual farm owner. The Act provides that "[t]he county acreage allotment shall be apportioned among farms. . ." 7 USCA § 1358(e). An allotment is defined as "[a]creage allocated to a farm for a year for . . . peanuts [or other crops] pursuant to the Agricultural Adjustment Act." 7 CFR § 719.2(a) (1976, 1977, 1980). The provisions of Part 729 — Regulations for Determination of Acreage Allotments . . . for Peanuts, 7 CFR § 729.1 et seq., make it clear that acreage allotments are apportioned among farms. "Federal and state courts are in accord in holding that acreage allotments under the Agricultural Adjustment Act and the applicable regulations run with the land . . . [cits.]" McClung v. Thompson, 401

F2d 253 at 256. (8th Cir. 1968). Thus, the general rule regarding disposition of allotments upon sale of a farm is: "If there is a transfer of ownership . . . [and] a transferee . . . acquires an entire farm, he necessarily receives the farm's allotments, and if he acquires only part of the farm, the running of the allotments generally is controlled by law rather than by the intent of the parties." Westfall, Agricultural Allotments as Property, 79 Harv. L. Rev. 1180 at 1191. See Phillips v. Simpson, 353 FSupp. 1139 (E.D. Ky. 1973); Williamson v. Holland, 232 FSupp. 479 (E.D. N.C. 1963). See generally, 3 CJS Agriculture §§ 41-43. Based on this rule, if an entire farm is sold, the acreage allotments pass with the farm; unless such allotments are specifically reserved by the seller.[1] See Phillips v. Woxman, 43 N. C. App. 739 (260 SE2d 97) (1979); Mace v. Berry, 225 S. C. 160 (81 SE2d 276) (1954).

The second question posed above has not been directly addressed by the courts, but this court believes that the transfer of an allotment from land subject to a purchase option agreement gives the holder of the option a cause of action for damages.

Under the Act, different statutory provisions govern the transfer of allotments by farm owners when the underlying farm land to which the allotment is allocated is not sold.[2] Under 7 USCA § 1358a "the owner and operator of any farm for which a peanut acreage allotment is established" is permitted "to sell or lease all or any part . . . of such allotment to any other owner or operator of a farm in the same county for transfer to such farm. . ." Allotments cannot be transferred except in compliance with the applicable regulations. See 7 CFR § 729.68 et seq. (1976, 1977) and 7 CFR § 729.30 et seq. (1980).

The appellee obviously had a right to transfer the allotments prior to the time she entered into the option contract.[3] She lost this

---

[1]See 7. USCA, § 1379 and 7 CFR, Part 719 regarding the authority of the County ASC Committee to reconstitute a farm's allotments. See also Parrish, Cotton Allotments, 45 Tex. L. Rev. 734 at 735-36.

[2]Based upon the statutory provisions for transfer of allotments, and not upon the statutes relating to sales of tracts of farm land discussed above, courts have stated that an allotment is a type of intangible personal property. Walker v. Miller, 507 SW2d 606 (1974). However, allotments cannot be considered as ordinary intangible property in isolation from the statutes and regulations which control their transfer. *Conifer Farms,* supra; Allen v. David, 334 F2d 592 (5th Cir. 1964); Thomas v. County Office Committee of Cameron County, 327 FSupp. 1244 (S.D. Tex. 1971). Thus, the allotment may assume different characteristics under traditional property law notions depending upon the type of property transaction involved in the case. For example, when an entire farm is sold the allotment is said to run with the land and pass to the purchaser. McClung, supra. But when a farmer transfers an allotment to leased farm land which he is working, the allotment does not necessarily become attached to the leased land. Walker, supra.

[3]This fact distinguishes the case *sub judice* from McClung, supra, in which the

right, however, by not specifically reserving it. The option required appellee to convey her farm in fee simple to appellant; there was no reservation of the allotments. As discussed above, when an entire farm is sold the allotments pass with the farm unless specifically reserved by the seller. Thus, once appellee agreed to the option she could no longer convey the allotments to a third party without being liable to appellant for damages. Under Georgia law, "[t]he effect of a contract for an option to purchase land is to bind the owner of the property to hold it in the same state and condition in which it existed at the time the contract was made. . ." *Mattox v. West,* 194 Ga. 310, 315 (21 SE2d 428) (1942). Accordingly, the appellee is liable for damages and the trial court erred in granting her motion for summary judgment.

In regard to the damages recoverable, the appellant will have the opportunity at trial to show what losses it has incurred as a result of being deprived of the allotments. In its pleadings the appellant also sought the return of the allotments. Apparently, the allotments are now assigned to land owned by appellee's brother, who is not a party to this action. Thus, as the pleadings now exist, the trial court would not be able to order the return of the allotments.[4] It is possible, however, that appellee might be able to mitigate her damages by effectuating a return of the allotments to appellant. Otherwise the measure of damages may be the market value of the allotments which should have passed to appellant with the farm.[5]

The judgment of the trial court is reversed, and the case is remanded for further consideration consistent with this opinion.
*Judgment reversed. All the Justices concur.*

---

allotments could not be transferred under the applicable regulations. Because of this fact, the court refused to apply a conversion theory in McClung.

[4] Usually cases involving a controversy between two or more farm owners over claims of ownership to the same allotment are to be resolved by the County ASC Committee. See *Conifer Farms,* 237 Ga. at 45; McClung, 401 F2d at 257; Phillips v. Woxman, 260 SE2d at 100. Cf. Miguez v. Miguez, 453 SW2d 514 at 520 (1970), where the court stated that a husband could be ordered to apply for a transfer of allotments *"to his divorced wife in connection with the divorce proceedings,* provided all requirements of the statutes and regulations are met." It was also held, however, that the trial court could not independently make a division of the allotments. See generally, 3 CJS Agriculture § 48.

[5] If the allotments are returned, the damages recoverable would be the fair rental value of the allotments for the time appellant was deprived of them. If the allotments are not returned, the damages may be the fair market value of the allotments at the time they should have passed to the appellant. Interest may be considered, but cannot be recovered *eo nomine.*

ARGUED JUNE 4, 1980 — DECIDED
SEPTEMBER 24, 1980.

*Smith & Jones, William E. Smith,* for appellant.
*McKinney & Thornton, Richard B. Thornton,* for appellee.