The **FEDERAL LAND BANK OF COLUMBIA,** Plaintiff,

v.

**Gloria C. SHEPARD, et al.,** Defendants.

**Civ. A. No. 86–140–ALB–AMER.**

United States District Court,
M.D. Georgia,
Albany-Americus Division.

Nov. 7, 1986.

Rikard L. Bridges, Bainbridge, Ga., for plaintiff.

Thomas L. Kirbo, Moultrie, Ga., Mark A. Gonnerman, Evans J. Plowden, Jr., Albany, Ga., John L. Lynch, Asst. U.S. Atty., Macon, Ga., for defendants.

FITZPATRICK, District Judge.

On August 19, 1986, plaintiff Federal Land Bank of Columbia filed a complaint for declaratory judgment in the Superior Court of Dougherty County. The essence of the controversy as set forth in the complaint concerns a dispute regarding the ownership and lien interest in a peanut quota. Three of the defendants named in the complaint, J.R. Brooks, James Jackson and Robert McLendon (the federal defendants) are members of the Calhoun County Agricultural Stabilization and Conservation Service (A.S.C.S.) committee. The complaint seeks to enjoin the federal defendants from taking any action to effect a transfer of the disputed peanut quota pending resolution of the issues raised in the complaint. The federal defendants removed this case to federal court on September 9, 1986, pursuant to 28 U.S.C.A. § 1442(a)(1).

This case is presently before the court on the federal defendants' Motion to Dismiss and defendant Shepard's Motion for a Preliminary Injunction. This case indicates that not only must today's farmer be a businessman, it helps if the farmer is also a lawyer.

At the heart of this case is a federal peanut quota. Peanut quotas are established for individual farms pursuant to the Agricultural Adjustment Act of 1938, 7 U.S.C.A. §§ 1281–1393 (the Act). Peanuts grown pursuant to the poundage quota established for a farm (quota peanuts) are valuable because they can be used for food use, which is a higher value use. Non-quota peanuts, known as additional peanuts, can only be used for export or domestic crushing for oil. 7 U.S.C.A. §§ 1358(v), 1359(m). In order to market any peanuts, the A.S.C.S. must issue a marketing card that will show whether the peanuts are "quotas" or "additionals."

Generally, once a quota is established for a farm it will continue to be established for that farm for future crops, except to the extent that the quota is transferred pursuant to agency regulations and the operative statute, 7 U.S.C.A. § 1358a. In this case

the disputed quota, which amounts to around 325,000 pounds, was on a Terrell County farm owned by Frank Hines in 1983. Hines wished to convey the farm and the quota to Winston Shepard. Shepard then wanted to move the quota to a farm in Baker County. This transfer was complicated by the requirements of the Act that a quota can only be moved within the same county or to an adjacent county. Baker County is not adjacent to Terrell County; rather, Calhoun County separates the two.

In an effort to overcome this obstacle Hines transferred the quota to another farm he owned in Calhoun County, and he thereafter sold the Terrell County farm to Shepard. Once the quota was in Calhoun County, Shepard combined his Baker County farm with Hines' Calhoun County farm as one farming unit for A.S.C.S. purposes. While the farms were combined in 1984, it appears that Shepard grew the quota on his Baker County tract. Hines, however, later ran into financial difficulty that required the "decombination" of the Calhoun and Baker tracts. Because the Calhoun tract had contributed the quota to the combined farm, the A.S.C.S. committee determined that the quota should continue to rest on the Calhoun County tract after the "decombination." At no time during the combination was there ever a permanent transfer of the quota to the Baker County tract pursuant to the Act. 7 U.S.C.A. § 1358a, 51 Fed. Reg. 22,493–22,495 (1986) (to be codified at 7 CFR § 729.343–.355).

In order to effect a permanent transfer of the quota off the Calhoun County farm the owner, operator and lienholder of the tract would have to agree to the transfer. 7 U.S.C.A. § 1358a; 51 Fed. Reg. 22,493 et seq. (1986) (to be codified at 7 C.F.R. § 729.343 et seq.). The owner, operator and lienholder of the Calhoun County tract would also have to agree to a temporary transfer or lease of the quota. 7 U.S.C.A. § 1358(k). At all times material to this case the Federal Land Bank of Columbia has held a lien on the Calhoun County property.

The quota was grown on the Calhoun County tract in 1985 because Shepard could not obtain the agreement of the "operator" of the farm in 1985, Cheney, and the lienholders to a transfer of the quota. On July 2, 1985, due to Hines' default, the Albany Production Credit Association (PCA) foreclosed on the Calhoun County property subject to the FLB security deed. As a result of the foreclosure, the PCA acquired title to the Calhoun County farm. On December 11, 1985 the PCA sold the Calhoun County farm to Lonnie H. Pope and Beverly Beadles Pope, expressly excluding from the sale any of the disputed peanut quota.

On January 31, 1986, Verna Ray Adams entered into an agreement to lease the Calhoun County farm and all peanut quotas for $54,000.00. Adams is now the "operator" of the Calhoun County farm.

On the same day that the PCA sold the Calhoun County farm to the Popes, December 11, 1985, it also executed a quit-claim deed in favor of Shepard in which the PCA quitclaimed any interest it had in the disputed quota. Shepard subsequently planted peanuts on the Baker County property for the 1986 season. Adams planted peanuts on the Calhoun County property for the 1986 season. On July 3, 1985, the Calhoun County A.S.C.S. office issued a Notice of Peanut Poundage Quota, a Form 1001, showing that the disputed quota rested on the Calhoun County property. Shepard did not seek administrative review of this action.

On October 17, 1986, the A.S.C.S. office issued a marketing card to Adams, because, according to the A.S.C.S., the quota still rests on the Calhoun County property. The requirements of the Act and the applicable regulations regarding transfer of a peanut quota have not been met.

On that same day Shepard, believing that the quota rightfully belonged on the Baker County property and that he should have been issued the marketing card, requested that this court issue a temporary restraining order. The federal defendants were ordered to retrieve the marketing card and to hold it until a hearing could take place.

It is this court's decision that the federal defendants' Motion to Dismiss should be granted, and that Shepard's Motion for a Preliminary Injunction should be denied. The court will address these two motions in one discussion, because many of the same reasons that support the motion to dismiss also support a denial of the preliminary injunction.

The first obstacle that one must overcome when suing the federal government is that of sovereign immunity. " 'The United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *United States v. Mitchell*, 445 U.S. 535, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941)). Prefatory to an invocation of sovereign immunity as a jurisdictional bar to suit, however, is a determination that the action is against the sovereign. *Panola Land Buyers Ass'n. v. Shuman*, 762 F.2d 1550, 1555 (11th Cir.1985); *Helton v. United States*, 532 F.Supp. 813, 818 (S.D.Ga.1982).

■ FLB contends that sovereign immunity does not apply because it is seeking to enjoin individuals rather than the A.S.C.S. Those individuals, however, are officers or agents of the A.S.C.S. As the Supreme court stated in *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), "[i]f the denomination of the party defendant by the plaintiff were the sole test of whether a suit was against the officer individually or against his principal, the sovereign, our task would be easy." *Id.* at 1460. The answer to whether the action is against the sovereign is obtained not by looking at the denomination of the parties, but at the nature of the relief sought. *Id.* An action is one against the United States as sovereign when the judgment sought is to be satisfied from monies of the federal treasury, or when the judgment interferes with the public administration, or when the judgment's effect is to compel or restrain the

government's actions. *Panola*, 762 F.2d at 1555 (citing *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)).

■ In this case both Shepard and the FLB seek to restrain the government's actions. FLB seeks to enjoin any possible transfer of the peanut quota off the Calhoun County property, and Shepard seeks to enjoin the A.S.C.S. officials from issuing a marketing card. Because the sovereign can only act through its agents, when the agents' actions are restrained the sovereign itself is also restrained. *Larson*, 69 S.Ct. 1460. The doctrine of sovereign immunity, therefore, is properly invoked in the present action.

After the court has determined that the relief sought by FLB and Shepard is against the United States as sovereign, the next step is to determine whether the United States has consented to be sued and the scope of that consent.

Section 702 of the Administrative Procedure Act, 5 U.S.C.A. § 702, "waives sovereign immunity for actions against federal government agencies, seeking nonmonetary relief, if the agency conduct is otherwise subject to a judicial review." *Sheehan v. Army and Air Force Exch. Serv.*, 619 F.2d 1132, 1139 (5th Cir.1980), *rev'd on other grounds*, 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1983), *cited in Panola*, 762 F.2d at 1555. As stated in *Mitchell*, the terms of the sovereign's consent to be sued define the court's jurisdiction to entertain the suit. *Mitchell* 100 S.Ct. at 1352. In this case section 702 the APA defines the terms of the sovereign's consent.

The first requirement in determining the applicability of the section 702 waiver is that the relief sought must be "other than money damages...." 5 U.S.C.A. § 702. That requirement is met here. Both Shepard and FLB seek injunctive relief. This does not end the inquiry, however, because the governmental acts that give rise to the complaint must amount to "agency action" with the purview of section 702.

■ The APA provides that "[a] person suffering legal wrong because of *agency*

*action,* or adversely affected or aggrieved by *agency action* within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C.A. § 702 (emphasis added). Section 702 pertains to actions "stating a claim that an agency or an officer or employee thereof *acted* or *failed to act* in an official capacity or under color of legal authority...." *Id.* (emphasis added). In this case FLB does not complain of any agency action. Because FLB fails to state a claim under the APA, section 702 waiver does not apply and suit is barred by sovereign immunity.

■ Even if sovereign immunity did not apply to FLB's claim against the federal defendants, this court would still be without jurisdiction to hear the claim because it does not present a justiciable controversy. It is axiomatic that the exercise of federal judicial power is limited to a case or controversy. U.S. Const. art. III, § 2. There is no case or controversy within the meaning of article III when both sides to a suit desire the same result. *Moore v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 47, 91 S.Ct. 1292, 1293, 28 L.Ed.2d 590 (1971). In this case FLB seeks to enjoin the A.S.C.S. from transferring the disputed quota off the Calhoun County property. The A.S.C.S., on the other hand, has consistently maintained that it is without the authority to transfer the disputed quota absent the agreement of the lienholder, which is the FLB. The FLB, and not this court, can determine whether or not the A.S.C.S. will transfer the disputed quota.

While the FLB does not complain of "agency action" as used in section 702, Shepard does claim that he suffered a "legal wrong because of agency action...." 5 U.S.C.A. § 702. Specifically, Shepard complains of the action of the A.S.C.S. in issuing a marketing card to Adams. There are other obstacles to Shepard proceeding under the APA even though he does make a colorable claim of agency action. Section 702 of the APA goes on to provide that "[n]othing herein ... affects other limitations on judicial review or the power or

duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground...." 5 U.S.C.A. § 702.

■ The general rule in the Eleventh Circuit is that a judicial challenge to agency action must occur subsequent to the exhaustion of administrative remedies. *Panola,* 762 F.2d at 1556.

The exhaustion rule serves a number of policies, including promoting consistency in matters which are within agency discretion and expertise, permitting full development of a technical issue and factual record prior to court review, and avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any errors and possibly moot the need for court action.

*Deltona Corp. v. Alexander,* 682 F.2d 888, 893 (11th Cir.1982).

There are, of course, exceptions to the "exhaustion" rule. The court in *Panola* stated:

As with many broad doctrines of judicial function, the exhaustion doctrine has exceptions. Courts will not require exhaustion when the administrative remedy is inadequate because it does not exist, or would not provide relief commensurate with the claim, or could unreasonably delay the action and thereby create a serious risk of irreparable injury. *Walker v. Southern Railway,* 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966); *Patsy v. Florida International University,* 634 F.2d 900, 903 (5th Cir.1981), *rev'd on other grounds,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Rhodes v. United States,* 574 F.2d, [1179] at 1181 [ (5th Cir.1978) ]. Nor will exhaustion be required if the claim clearly will be denied, or where administrative action will not resolve the merits of the claim, as in a constitutional attack on the administrative scheme. *Public Utilities Commission v. United States,* 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); *Patsy,* 634 F.2d at 904; *Fuentes v. Roher,* 519 F.2d 379 (2d Cir.1975); *Deltona Corp.,* 68 F.2d at 893. Further, exhaustion is

not a jurisdictional doctrine, but one subject to the discretion of the trial court. *NRLB v. Industrial Union of Marine and Shipbuilding Workers*, 391 U.S. 418, 419, 426 n. 8, 88 S.Ct. 1717, 1719, 1723 n. 8, 20 L.Ed.2d 706 (1968); *Haitian Refugee Center v. Smith*, 676 F.2d [1023] at 1034 [ (5th Cir.1982) ].

*Panola*, 762 F.2d at 1556–57.

■ This court believes that Shepard should first exhaust his administrative remedies. Shepard has the available remedy of appealing the local A.S.C.S. decision to the State A.S.C.S. committee. Shepard can then appeal the State A.S.C.S. decision to the national A.S.C.S. office. 7 C.F.R. §§ 780.4, 780.5. Shepard also has the alternative of expediting this process by appealing directly to the national A.S.C.S. office.

Shepard would not be entitled to the preliminary injunction he requests even if he was not required to first exhaust his administrative remedies. In order to obtain a preliminary injunction, movant must show that "(1) there is a substantial likelihood that [he] will prevail on the merits at trial; (2) [he] will suffer irreparable harm if [he is] not granted injunctive relief; (3) the benefits the injunction will provide [him] outweighs the harm it will cause the [nonmovants]; and (4) issuance of the injunction will not harm public interest." *Callaway v. Block*, 763 F.2d 1283, 1287 (11th Cir.1985). The movant must meet all four of these requirements before the injunction can issue. *Id.* In the case *sub judice* Shepard has failed to carry his burden of persuasion for the first two requirements.

■ Shepard has not shown that there is a substantial likelihood that he will prevail on the merits. Shepard claims that he has contracted with Hines to have the quota transferred to him and that he has paid consideration pursuant to that contract. Taken as true these claims still do not entitle Shepard to the relief that he is seeking. The Act, 7 U.S.C.A. §§ 1358a(j)(1), (*l* )(1), and the applicable regulations, 51 Fed. Reg. 22,493 (1986) (to be codified at 7 C.F.R. § 729.343), clearly state that the transfer of a quota "from a farm subject to a ... lien [is not] permitted unless the transfer is agreed to by the lienholders." 7 U.S.C.A. § 1358a(*l* )(1). No one has disputed that the Calhoun County property is subject to a mortgage held by FLB, and no one has disputed that the FLB has not agreed to the transfer. In fact, Shepard has made no claim that the FLB is under any contractual or other obligation to agree to the transfer.

Even when the FLB is taken out of the picture it still does not appear that Shepard is entitled to effect the transfer. The Act provides the following limitation on the transfer of quotas:

> (2) The owner or operator of a farm may transfer all or any part of the farm poundage quota for such farm to any other farm owned or controlled by such owner or operator that is in the same county or in a county contiguous to such county in the same State and that has a farm poundage quota for the preceding year's crop.

7 U.S.C.A. § 1358a(k)(2). Pursuant to this section transfers outside the county are permitted only when the transfer is to a farm in an adjacent county and the owner or operator is the same for both the transferring and receiving farm. There is, of course, no contention that Shepard is the owner or operator of the Calhoun County farm (the transferring farm) as well as the Baker County farm (the receiving farm).

■ The second requirement for a preliminary injunction is that the movant must show that he will suffer irreparable harm if the court does not grant the injunction. Shepard has not shown irreparable harm because he has an adequate remedy at law. If Shepard does indeed have a valid contract for the quota he can bring an action for damages for breach of contract. *See Combustion Engineering, Inc. v. Norris*, 246 Ga. 413, 271 S.E.2d 813 (1980). The damages recoverable would be the amount of losses Shepard has sustained as a result of being deprived of the allotments. *Id.* at 416, 271 S.E.2d at 816.

The court wonders whether or not it has the discretion to remand this case back to the Superior Court of Dougherty County. The only way this case made its way to the federal courts was through the federal defendants' removal under 28 U.S.C.A. § 1442(a)(1). Now that this court has dismissed the federal defendants as parties, there appears to be no reason for the case to continue in federal court, because none of the other parties have expressed any desire to have the district court decide this case on the merits. The FLB, although it could have filed suit in federal court under diversity jurisdiction, chose to file suit in state court. The question of remand has not been raised by the parties, however, and this court declines to rule on that issue sua sponte at this time.

For the reasons stated in this opinion the federal defendants' Motion to Dismiss is GRANTED, and the Motion for a Preliminary Injunction is DENIED.