**In the Matter of Loran E. WILLIAMS, Jr., Debtor.**

**Loran E. WILLIAMS, Jr., Plaintiff,**

**v.**

**SOUTH GEORGIA PRODUCTION CREDIT ASSOCIATION, Successor by Merger of South Atlantic Production Credit Association, South Atlantic Production Credit Association, Farm Credit Bank of Columbia, Successor by Merger of the Federal Land Bank of Columbia, Federal Land Bank of Columbia, C.R. Jones, individually, and Adraine Peck, individually, Defendants.**

**Bankruptcy No. 87–10060–ALB.
Adv. No. 90–1044.**

United States Bankruptcy Court,
M.D. Georgia,
Albany Division.

Feb. 5, 1992.

312

Ward Stone, Jr., David A. Garland, Macon, Ga., for Loran E. Williams, Jr.

Jesse G. Bowles, III, Cuthbert, Ga., for C.R. Jones.

James E. Friese, Cuthbert, Ga., for Adraine Peck.

John T. McGoldrick, Jr., Macon, Ga., for Farm Credit Bank of Columbia and South Georgia Production Credit Ass'n.

## STATEMENT OF THE CASE

ROBERT F. HERSHNER, Jr., Chief Judge.

Loran E. Williams, Jr., Debtor, Plaintiff, filed a "Complaint for Recovery of Unauthorized Post–Petition Transfers, Etc." on September 7, 1990. C.R. Jones, Defendant, filed his answer on October 11, 1990. The South Georgia Production Credit Association, South Atlantic Production Credit Association,[1] Farm Credit Bank of Columbia, and Federal Land Bank of Columbia,[2] Defendants, filed their answer on October 17, 1990. Adraine Peck, Defendant, filed his answer on October 17, 1990.

PCA filed a counterclaim against Plaintiff and a cross-claim against Mr. Peck and Mr. Jones on October 17, 1990. Mr. Jones filed an answer to the cross-claim on October 24, 1990. Mr. Peck filed an answer to the cross-claim on November 1, 1990. Plaintiff filed an answer to the counterclaim on November 5, 1990.

A trial was held on October 1, 1991. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

Prior to trial, Plaintiff, PCA, and the Bank reached a settlement on Count III and Count IV of Plaintiff's complaint. The Court entered an order on November 14, 1991, approving the settlement. The Court entered an order on January 9, 1992, dismissing Count III and Count IV of Plaintiff's complaint. Plaintiff has resolved all of his claims against the Bank and some of his claims against PCA.

## FINDINGS OF FACT

Plaintiff is a farmer. Plaintiff executed a deed to secure debt ("security deed") dated February 14, 1983, in favor of PCA. The property conveyed was known as the Hunt Place in Randolph County, Georgia. The Hunt Place contained 385.89 acres. Plaintiff defaulted on the underlying debt. He filed a petition under Chapter 11 of the Bankruptcy Code on January 30, 1987.

Plaintiff, PCA, and the Bank reached an agreement.[3] Plaintiff agreed to execute a deed in lieu of foreclosure in favor of PCA on the Hunt Place. The Hunt Place had a

1. South Georgia Production Credit Association ("PCA") is the successor in interest of South Atlantic Production Credit Association.

2. Farm Credit Bank of Columbia (the "Bank") is the successor in interest of The Federal Land Bank of Columbia.

3. Plaintiff had executed several security deeds in favor of PCA on other real property. Those security deeds are not directly involved in this adversary proceeding.

154,409–pound peanut quota. Plaintiff, under the agreement, was to transfer 120,000 pounds of quota to a farm owned by him in Crisp County, Georgia, known as the Williams Place. Plaintiff had executed a security deed on the Williams Place in favor of PCA on February 14, 1983. PCA's lien on the Williams Place was to attach to the 120,000 pounds of quota upon transfer. The remaining 34,409 pounds of quota were to remain with the Hunt Place.

The Court entered a "Joint Consent Order" approving the agreement on February 26, 1988. The Court entered an "Amended Joint Consent Order" on June 6, 1988. Terms of the Joint Consent Order were incorporated into Plaintiff's Chapter 11 plan. The Court entered an interlocutory order of confirmation on July 7, 1988. A final confirmation order was entered on February 21, 1989. Plaintiff's confirmed plan provides that upon confirmation, all property of the debtor shall revest in the reorganized debtor.

Plaintiff executed the deed in lieu of foreclosure in favor of PCA on the Hunt Place on September 12, 1988. The deed provided that 34,409 pounds of quota were to remain with the Hunt Place [4] and that 120,000 pounds of quota were to be transferred to the Williams Place. This deed was filed for record on September 19, 1988.

On December 2, 1988, PCA sold, at public auction, the Hunt Place and the 34,409 pounds of quota. Mr. Peck purchased 203.4 acres for $106,785. PCA executed a warranty deed in favor of Mr. Peck on January 18, 1989. This deed was filed for record on January 20, 1989. The sale closed on January 21, 1989.[5] Mr. Peck did not purchase any peanut quota and understood that he was purchasing only land.

Mr. Jones purchased 182.49 acres of the Hunt Place for $126,680. PCA executed a warranty deed in favor of Mr. Jones on January 18, 1988. The sale closed on January 18, 1989. This deed was filed for record on January 20, 1989. Mr. Jones purchased the 34,409 pounds of quota and received a bill of sale dated January 20, 1989. He signed a UCC Financing Statement dated January 20, 1989, on the quota in favor of PCA. The Court's copy of the financing statement does not show that it was filed for record. The 34,409 pounds of quota are not at issue. Mr. Jones understood that his purchase did not include any portion of the 120,000 pounds of quota.

It is undisputed that Plaintiff, PCA, and the Bank intended for 120,000 pounds of quota to be transferred to the Williams Place in Crisp County. It is undisputed that Mr. Jones and Mr. Peck understood that their purchases of the Hunt Place did not include the 120,000 pounds of quota. Neither Mr. Jones nor Mr. Peck paid any consideration for the 120,000 pounds of quota.

Plaintiff did not seek prior approval from the Crisp County Agricultural Stabilization and Conservation Service (ASCS) of the United States Department of Agriculture of his plan to transfer the 120,000 pounds of quota to the Williams Place in Crisp County. Nor did Plaintiff seek approval of his plan to leave the 34,409 pounds of quota on the Hunt Place. PCA did not notify the Crisp County ASCS that it had acquired the Hunt Place during the time that it owned the farm. That is between the date Plaintiff executed the deed in lieu of foreclosure on September 12, 1988, and December 2, 1988, the date PCA sold the Hunt Place at public auction.

On January 23, 1989, PCA sent a letter to the Crisp County ASCS, stating that Mr. Jones now owned part of the Hunt Place. PCA sent a similar letter dated January 25, 1989, stating that Mr. Peck also owned part of the Hunt Place. PCA previously had notified the Randolph County ASCS that Plaintiff had signed a deed in lieu of foreclosure on the Hunt Place.[6]

Federal law provides that a farmer cannot transfer a peanut quota to a farm in

---

**4.** Plaintiff conveyed the 34,409 pounds of quota to PCA.

**5.** The evidence does not show the reason that the warranty deed was executed and filed for record prior to the closing. This does not affect the Court's decision.

**6.** The evidence does not show the exact date.

another county owned by the farmer unless the counties are contiguous.[7] Randolph County and Crisp County are not contiguous counties. The Crisp County ASCS, upon receiving the January 23 and 25, 1989, letters from PCA, initiated a "reconstitution" of the Williams Place. The Crisp County ASCS determined that the 120,000 pounds of quota had to remain on the Hunt Place in Randolph County.

After the determination was made by the Crisp County ASCS, the Randolph County ASCS allocated 106,524 pounds of quota to the portion of the Hunt Place purchased by Mr. Peck. The remaining 13,476 pounds of quota were allocated to the portion of the Hunt Place purchased by Mr. Jones. These allocations became effective on or about April 4, 1989.

Plaintiff administratively appealed the Crisp County ASCS decision but was not successful. In the case at bar, Plaintiff does not contend that the decision was contrary to federal law.

A pound of peanut quota was selling for forty-five cents to forty-eight cents in 1988 and 1989. It is currently selling for about sixty cents. The rental value for a pound of peanut quota was nine cents during 1988, 1990, and 1991.[8]

All parties agree that the 120,000 pounds of quota did not pass under Plaintiff's deed in lieu of foreclosure.

## CONCLUSIONS OF LAW

Plaintiff seeks to recover the value of the 120,000 pounds of quota under two theories. First, Plaintiff contends that the transfer of the quota was an unauthorized postpetition transfer under section 549 of the Bankruptcy Code.[9] Plaintiff contends that he can recover from PCA or, in the alternative, from Mr. Jones and Mr. Peck under section 550 of the Bankruptcy Code.[10]

Second, Plaintiff contends that Mr. Jones and Mr. Peck have been unjustly enriched and that equity requires that he be compensated.

A brief discussion of the peanut quota system is helpful to understand the issues presented. In *Federal Land Bank of Co-*

---

7. *See* 7 U.S.C.A. § 1358a(k)(2) (West 1988). *See also* 7 C.F.R. § 729.344 (1991).

8. The trial transcript does not show the rental value in 1989.

9. 11 U.S.C.A. § 549 (West Supp.1991).

10. 11 U.S.C.A. § 550 (West 1979 & Supp.1991). This section provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
(2) any immediate or mediate transferee of such initial transferee.
(b) The trustee may not recover under section (a)(2) of this section from—
(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
(2) any immediate or mediate good faith transferee of such transferee.

(c) The trustee is entitled to only a single satisfaction under subsection (a) of this section.
(d)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—
(A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and
(B) any increase in the value of such property as a result of such improvement, of the property transferred.
(2) In this subsection, "improvement" includes—
(A) physical additions or changes to the property transferred;
(B) repairs to such property;
(C) payment of any tax on such property;
(D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee; and
(E) preservation of such property.
(e) An action or proceeding under this section may not be commenced after the earlier of—
(1) one year after the avoidance of the transfer on account of which recovery under this section is sought; or
(2) the time the case is closed or dismissed.
11 U.S.C.A. § 550 (West 1979 & Supp.1991).

*lumbia v. Shepard,*[11] the United States District Court for the Middle District of Georgia stated:

> At the heart of this case is a federal peanut quota. Peanut quotas are established for individual farms pursuant to the Agricultural Adjustment Act of 1938, 7 U.S.C.A. §§ 1281–1393 (the Act). Peanuts grown pursuant to the poundage quota established for a farm (quota peanuts) are valuable because they can be used for food use, which is a higher value use. Non-quota peanuts, known as additional peanuts, can only be used for export or domestic crushing for oil. 7 U.S.C.A. §§ 1358(v), 1359(m). In order to market any peanuts, the A.S.C.S. must issue a marketing card that will show whether the peanuts are "quotas" or "additionals."
>
> Generally, once a quota is established for a farm it will continue to be established for that farm for future crops, except to the extent that the quota is transferred pursuant to agency regulations and the operative statute, 7 U.S.C.A. § 1358a.

646 F.Supp. at 1146.

In *Callaway v. Block,*[12] the Eleventh Circuit Court of Appeals stated:

> For some time, the United States has had a national peanut quota. Peanut farmers throughout the country are given allotments of the quota, based primarily on the peanut production history of their land. The federal government provides guaranteed price supports for these quota peanuts, in an effort to provide peanut farmers with some income protection and consumers with consistent prices.

763 F.2d at 1285.

A poundage quota for peanuts is given to the farm, not to the individual farm owner. *See Combustion Engineering, Inc. v. Norris,* 246 Ga. 413, 271 S.E.2d 813, 815 (1980). Section 1358(s)(1)(A)(i) of the Agriculture Adjustment Act of 1938 (the "Act")[13] provides, in part:

> (s) Establishment of farm poundage quotas
>
> (1)(A) A farm poundage quota for each of the 1986 through 1990 marketing years shall be established—
>
>> (i) for each farm that had a farm poundage quota for peanuts for the 1985 marketing year; and

7 U.S.C.A. § 1358(s)(1)(A)(i) (West 1988).

Section 1358a(k) and (*l*)[14] of the Act controls the transfer of peanut poundage quotas during the 1986 through 1990 crop years. That section provides, in part:

> (k) Sale or lease of farm poundage quotas; limitations
>
> . . . .
>
> (2) The owner or operator of a farm may transfer all or any part of the farm poundage quota for such farm to any other farm owned or controlled by such owner or operator that is in the same county *or in a county contiguous* to such county in the same State and that had a farm poundage quota for the preceding year's crop.
>
> . . . .
>
> (*l*) Applicable conditions to transfers of farm poundage quotas
>
> Transfers (including transfer by sale or lease) of farm poundage quotas under this section shall be subject to all of the following conditions:
>
>> (1) No transfer of the farm poundage quota from a farm subject to a mortgage or other lien shall be permitted unless the transfer is agreed to by the lienholders.
>>
>> (2) No transfer of the farm poundage quota shall be permitted if the county committee established under section 590h(b) of Title 16 determines that the receiving farm does not have adequate tillable cropland to produce the farm poundage quota.
>>
>> (3) No transfer of the farm poundage quota shall be effective until a

---

**11.** 646 F.Supp. 1145 (M.D.Ga.1986).

**12.** 763 F.2d 1283 (11th Cir.1988).

**13.** 7 U.S.C.A. § 1358(s)(1)(A)(i) (West 1988).

**14.** 7 U.S.C.A. § 1358a(k) and (*l*) (West 1988). *See also* 7 C.F.R. §§ 729.344 and 729.348 (1991).

record thereof is filed with the county committee of the county to which such transfer is made and such committee determines that the transfer complies with this section.

(4) Such other terms and conditions that the Secretary may by regulation prescribe.

7 U.S.C.A. § 1358a(k)(2) and (*l*) (West 1988) (emphasis added).

Prior to the 1981 crop year, farms were allocated "farm acreage allotments" [15] rather than "farm poundage quotas." [16] In *Combustion Engineering, Inc. v. Norris*, Norris gave an option to purchase her entire farm in fee simple. The purchaser exercised the option and received a warranty deed from Norris. Neither the option to purchase nor the warranty deed specifically referred to the transfer of the peanut allotments assigned to Norris's farm. Norris transferred the peanut allotment to her brother after she gave the option to purchase but before the purchaser exercised the option. The purchaser contended that it was the rightful owner of the allotment. The Georgia Supreme Court stated:

> The allotment is not made to the individual farm owner. The Act provides that "[t]he county acreage allotment shall be apportioned among farms...." 7 USCA § 1358(e). An allotment is defined as "[a]creage allocated to a farm for a year for ... peanuts [or other crops] pursuant to the Agricultural Adjustment Act." 7 CFR § 719.2(a) (1976, 1977, 1980). The provisions of Part 729–Regulations for Determination of Acreage Allotments ... for Peanuts, 7 CFR § 729.1 et seq., make it clear that acreage allotments are apportioned among farms. "Federal and state courts are in accord in holding that acreage allotments under the Agricultural Adjustment Act and the applicable regulations run with the land ... [cits.]" *McClung v. Thompson*, 401 F.2d 253 at 256 (8th Cir.1968). Thus, the general rule regarding disposition of allotments upon sale of a farm is: "If there is

a transfer of ownership ... [and] a transferee ... acquires an entire farm, he necessarily receives the farm's allotments, and if he acquires only part of the farm, the running of the allotments generally is controlled by law rather than by the intent of the parties." Westfall, Agricultural Allotments as Property, 79 Harv.L.Rev. 1180 at 1191. See *Phillips v. Simpson*, 353 F.Supp. 1139 (E.D.Ky. 1973); *Williamson v. Holland*, 232 F.Supp. 479 (E.D.N.C.1963). See generally, 3 CJS Agriculture §§ 41–43. Based on this rule, if an entire farm is sold, the acreage allotments pass with the farm; *unless such allotments are specifically reserved by the seller.*

271 S.E.2d at 815 (emphasis added).

The Court now turns to Plaintiff's contention that he can recover the value of the peanut quota under provisions of the Bankruptcy Code. Section 549(a) and (d) of the Bankruptcy Code [17] provides:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
>
> > (1) that occurs after the commencement of the case; and
> >
> > (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
> >
> > (B) that is not authorized under this title or by the court.
>
> ....
>
> (d) An action or proceeding under this section may not be commenced after the earlier of—
>
> > (1) two years after the date of the transfer sought to be avoided; or
> >
> > (2) the time the case is closed or dismissed.

11 U.S.C.A. § 549(a) and (d) (West Supp. 1991).

A debtor in possession can assert a cause of action under section 549(a). *Burlington Northern R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 703 (9th Cir.1988). "Any entity

---

**15.** *See* 7 U.S.C.A. § 1358(d) and (e) (West 1988).

**16.** *See* 7 U.S.C.A. § 1358(m)(1) (West 1988).

**17.** 11 U.S.C.A. § 549(a) and (d) (West Supp. 1991).

asserting the validity of a transfer under § 549 of the Code shall have the burden of proof." Bankruptcy Rule 6001.

There is no dispute that the exceptions found in subsections (b) and (c) to section 549 do not apply in the case at bar.

■ The bankruptcy estate includes all of the debtor's legal and equitable interests in property, wherever located and by whomever held, as of the commencement of the bankruptcy case. 11 U.S.C.A. § 541(a)(1) (West 1979). Plaintiff may have conveyed some of his interest in the peanut quota to PCA by virtue of the security deed. *See In re Flanders*, 45 B.R. 222, 224 (Bankr.M.D.Ga.1984) (security deed transfers interest in peanut allotment to creditor). Plaintiff, however, retained at least an equitable interest in the quota. This equitable interest became property of the bankruptcy estate. *See generally Jim Walter Homes, Inc. v. Saylors (In re Saylors)*, 869 F.2d 1434, 1437 (11th Cir.1989).

■ This Court authorized Plaintiff to transfer the peanut quota to his farm known as the Williams Place. This transfer was not made because of a mutual mistake of law. The peanut quota was assigned by the Randolph County ASCS to Mr. Jones and Mr. Peck because they are the current owners of the Hunt Place. This transfer was not authorized by this Court or the Bankruptcy Code or anticipated by the parties. The deed in lieu of foreclosure, which was promptly recorded, specifically reserved the peanut quota and referenced this Court's Joint Consent Order. Thus, Mr. Jones and Mr. Peck had constructive notice of the provisions of that deed. The Court is persuaded that Plaintiff continues to have an equitable interest in the peanut quota. Since the Randolph County ASCS has assigned the peanut quota to Mr. Jones and Mr. Peck, they are, in effect, in possession of an asset belonging to Plaintiff.

Mr. Jones and Mr. Peck cannot transfer the peanut quota to the Williams Place, Plaintiff's farm in Crisp County. However, Mr. Jones and Mr. Peck, as owners of the Hunt Place, can comply with applicable regulations and sell the peanut quota.[18] Plaintiff specifically reserved the peanut quota, and all parties knew of the reservation. Mr. Jones and Mr. Peck would be entitled to their reasonable costs in selling the peanut quota and are eligible buyers. The sale proceeds should be paid to Plaintiff, subject to PCA's lien. This places the parties substantially in the positions that they anticipated.

The Court is persuaded that PCA's counterclaim and cross-claim are rendered moot by this decision.

An order in accordance with this memorandum opinion will be entered this date.

### ORDER

In accordance with the memorandum opinion entered this date; it is

ORDERED that Loran E. Williams, Jr., Plaintiff, hereby is determined to have an ownership interest in the 120,000 pounds of peanut quota assigned to the Hunt Place in Randolph County, Georgia; and it is further

ORDERED that Adraine Peck and C.R. Jones, the current owners of the Hunt Place, being in possession of the 120,000 pounds of peanut quota, hereby are ordered to sell the peanut quota in accordance with applicable regulations and turn over the proceeds of the sale to Plaintiff, subject to the lien of South Georgia Production Credit Association (PCA); and it is further

---

**18.** 7 U.S.C.A. § 1358b(a)(1) (West Supp.1991). This section provides:

§ 1358b. Sale, lease, or transfer of farm poundage quota for 1991 through 1995 crops of peanuts

(a) In general

(1) Authority

Subject to such terms, conditions, or limitations as the Secretary may prescribe, the own-

er ... of any farm for which a farm poundage quota has been established under this chapter may sell ... all or any part of the poundage quota to any other owner or operator of a farm within the same county for transfer to the farm....

7 U.S.C.A. § 1358b(a)(1) (West Supp.1991).

ORDERED that Adraine Peck and C.R. Jones shall recover their reasonable costs in selling the peanut quota; and it is further

ORDERED that the counterclaim filed by PCA against Plaintiff on the 17th day of October, 1990, hereby is determined to be moot; and it is further

ORDERED that the cross-claim filed by PCA against Adraine Peck and C.R. Jones on the 17th day of October, 1990, hereby is determined to be moot.

SO ORDERED.