A92A0722. SHEPARD et al. v. FEDERAL LAND BANK OF
COLUMBIA et al.
(421 SE2d 763)

COOPER, Judge.

Appellee Federal Land Bank of Columbia ("FLB") filed this declaratory judgment action seeking a determination of the ownership and lien interest in a disputed peanut quota. Appellants, owners of a farm in Baker County, claim an interest in the quota. They appeal various adverse rulings entered by the trial court.

"Peanut quotas are established for individual farms pursuant to the Agricultural Adjustment Act of 1938, 7 U.S.C.A. §§ 1281-1393 (the Act). Peanuts grown pursuant to the poundage quota established for a farm (quota peanuts) are valuable because they can be used for food use, which is a higher value use. Non-quota peanuts, known as additional peanuts, can only be used for export or domestic crushing for oil. [Cit.] In order to market any peanuts, the [Agricultural Stabilization and Conservation Service (ASCS)] must issue a marketing card that will show whether the peanuts are 'quotas' or 'additionals.' Generally, once a quota is established for a farm it will continue to be established for that farm for future crops, except to the extent that the quota is transferred pursuant to agency regulations and the operative statute. . . ." *Federal Land Bank of Columbia v. Shepard*, 646 FSupp. 1145, 1146 (M.D. Ga. 1986).

The rather involved set of facts surrounding the dispute is as follows: In 1983, the disputed quota was on a farm owned by Frank Hines ("Hines") in Terrell County. In 1984, Hines and appellants were desirous of moving the quota to appellants' farm in Baker County; however, pertinent statutes only allow such transfers within the same county or to an adjacent county. Baker County and Terrell County are not adjacent counties; they are separated by Calhoun County. Therefore, Hines transferred the quota to another farm he owned in Calhoun County and sold the Terrell County farm to appellants. With the quota in Calhoun County, appellants' Baker County farm and Hines' Calhoun County farm were combined as one farming unit for ASCS purposes; however, the quota was actually grown on the Baker County farm. FLB held security deeds on the Terrell and Calhoun County farms and consented to the transfer but obtained a financing statement on the quota. FLB also held a security deed on appellants' Baker County farm. Then, in 1985, Hines suffered financial difficulties which resulted in a foreclosure of the Calhoun County farm by the Albany Production Credit Association ("PCA"), which

held a second lien on the farm. Appellants moved to enjoin the foreclosure, asserting an interest in the quota by virtue of a lease agreement between Hines and appellants. The court enjoined foreclosure on the quota but permitted foreclosure on the real property. PCA purchased the farm at the foreclosure sale and subsequently sold it to Lonnie and Beverly Pope ("the Popes"), subject to the FLB security deed and expressly excluding the disputed quota. Despite the fact that it never claimed an interest in the quota, PCA also executed a quitclaim deed to appellants, waiving any interest in the quota. The Popes then leased the farm and all quotas to Adams Farms, which began to grow peanuts. Appellants and Adams Farms then requested marketing cards for the same peanuts. Initially, the Calhoun County ASCS determined that based on the quitclaim deed from PCA, it appeared that appellants were the owners of some 300,000 plus pounds of peanuts but that to obtain a quota transfer, appellants must obtain the signatures of the owner of the Calhoun County farm, the operator and any lienholder, recognizing that FLB held a lien on the quota. However, the ASCS also concluded that the quitclaim deed from PCA fulfilled the signature requirement of Mr. Pope as owner and operator, should he decide not to consent. FLB did not consent to the transfer, and the ASCS assigned the disputed quota to the Calhoun County farm, issuing a peanut marketing card to Adams Farms permitting the sale of the quota.

Appellants' attempts to have the disputed quota transferred to Baker County have been unsuccessful because FLB, as lienholder on the Calhoun County farm, will not consent to a transfer. In 1986, FLB initiated the instant action in the Superior Court of Dougherty County, and the case was moved to federal court. Appellants petitioned the court to enjoin the issuance of the marketing card to Adams Farms. The court determined that appellants did not exhaust their administrative remedies within the ASCS, denied appellants relief and remanded the case to the superior court. *Shepard*, supra.

In 1991, FLB liquidated the loan which was secured by appellants' Baker County farm and cancelled the financing statement on the quota. However, FLB did not release its lien on the Calhoun County farm. Appellants then sought a marketing card for the 1991 quota, and the executive director of the state ASCS, Ralph Hudgens ("Hudgens"), like the Calhoun County ASC Committee, determined that the agreement between appellants and the PCA conveyed ownership of the peanut quota to appellants; that the agreement took the place of Mr. Pope's signature if he refused to consent to a transfer; and also that FLB's termination of the lien on the Baker farm satisfied the requirement that FLB release its lien on the quota thereby enabling appellants to transfer the quota to Baker County. However, Hudgens subsequently "clarified" those conclusions and stated in a

letter to appellants that the existence of the lien on the Baker County farm was irrelevant as to whether or not there was a transfer of a quota from the Calhoun County farm; that the lienholder who must agree to the transfer is the lienholder of the farm where the quota is located; that the lienholder and the owner/operator must agree to the transfer; and that FLB had a lien on the Calhoun County farm but did not sign any quota transfer documents. Hudgens stated further that his clarified position was consistent with the declaration of the director of the national ASCS with oversight responsibilities of all aspects of the federal peanut program. In that declaration, the director concluded that Adams Farms was entitled to the marketing card until the quota is transferred pursuant to applicable regulations, which would include obtaining the consent of the owner, operator and lienholder. He recited further that the issue the local committee must address is not who owns the quota because quotas are established for farms not persons, but who owns, operates and holds a lien on the farm and whether a proper Form 375 has been executed and all other conditions have been met. Appellants are currently pursuing an administrative appeal of the determination of the state ASCS.

Appellants filed a counterclaim against FLB for tortious interference with a contract and asserted cross-claims against the Popes and Adams Farms for tortious interference, conversion, and declaratory relief and against Hines for breach of contract. The parties filed motions for summary judgment on the main claim and on the counterclaim and cross-claims. The Popes also moved for an order directing appellants to cancel notice of lis pendens. The trial court ruled adversely to appellants on the various motions for summary judgment, denied appellants declaratory relief and granted the order directing the cancellation of the notice of lis pendens. This appeal followed.

1. In their first, second and fifth enumerations of error, appellants argue that the trial court erred in finding no genuine issue of material fact as to the ownership of the quota, whether FLB's consent was required to effect a transfer and whether FLB had a duty to consent to the transfer.

"The County Agricultural Stabilization and Conservation (ASC) Committee allocates [quotas] to farms in the county pursuant to the provisions of the Act. [Cit.] The allotment is not made to the individual farm owner. . . . [A]creage allotments are apportioned among farms." *Combustion Engineering v. Norris*, 246 Ga. 413, 414 (2) (271 SE2d 813) (1980). "The crop allotments created under the . . . Act ([cit.]), although made transferable under prescribed regulations, are not ordinary intangible property subject to unrestricted alienation." *Conifer Farms v. Brent*, 237 Ga. 42, 44 (226 SE2d 585) (1976). The evidence is undisputed that at all times material to this case FLB had a lien on the Calhoun County farm. Nevertheless, appellants contend

they own the disputed quota by virtue of their lease agreement with Hines and the quitclaim deed executed by PCA, despite the fact that they do not own the farm to which the quota was allocated, relying on *Combustion Engineering v. Norris,* supra. Appellants' reliance is misplaced. In that case, at issue was a contract wherein plaintiff had the option to purchase a farm to which a quota had been allocated. The option did not specifically refer to the quota, and defendant/seller transferred the quota to a farm owned by her brother after plaintiff executed the option to purchase but before the exercise of the option and the final conveyance of the property. The court did not recognize an entitlement to the quota in the absence of the farm to which the quota was assigned. The court concluded that when an entire farm is sold upon which a quota is in effect, the quota runs with the land and passes to the purchaser in the absence of any specific agreement to the contrary and that if an option contract is executed, the owner cannot transfer a quota to a third party without incurring some liability to the holder of the option. Id. at 414-415. Therefore, defendant had a right to transfer the quota before she entered into the option contract, but she lost the right by not specifically reserving it and is thus liable for damages. In the instant case, appellants and Hines attempted to transfer a quota via an adjacent county, and pretermitting the question of whether the transfer was authorized by applicable regulations, there was no transfer to appellants' farm in Baker County; there was a foreclosure of the Calhoun County farm and a subsequent purchase of the farm by other parties; the ASCS determined that the quota was allocated to the Calhoun County farm; and there was no contractual relationship between appellants and the Popes or Adams Farms. Moreover, FLB held the first lien on the quota and was not a party to the quitclaim executed by PCA.

In addition, review of the trial court's order reveals that the court did not make a specific finding that any party owned the disputed quota. The court recognized that "[t]he Superior Court of Dougherty County is not the proper venue to determine ownership of the disputed quota." "The . . . Act provides for review of the decisions of county ACS committees. [Cit.] Such review is declared to be exclusive [cit.], and no court of the United States or of any state has jurisdiction to pass upon the legal validity of any determination of the committee except by the method of review provided. [Cit.]" *Conifer Farms,* supra at 45.

Appellants' contention that a genuine issue of material fact exists as to whether FLB released its lien on the quota such that its consent was not required is without merit. For this proposition, appellants rely on the erroneous conclusion reached by Hudgens that the release of the security interest on the Baker County farm satisfied the requirement that appellants obtain FLB's consent to a transfer. 7 USC

§ 1358a provides in part that no transfer shall be permitted unless agreed to by lienholders. Furthermore, we agree with the trial court that FLB had no duty to consent to the transfer or to facilitate the execution of the contract between appellants and Hines simply because it was aware of the contract and the steps taken by the parties to effect a transfer.

2. Appellants enumerate as error the trial court's determination that they failed to exhaust their administrative remedies and contend the proceedings in superior court should have been abated pending the resolution of the matter currently under review on appeal. However, the record contains no request by appellants for a stay in the proceedings nor does the record demonstrate that until the latest appeal, appellants attempted to obtain administrative review of any of the various determinations of the ASCS allocating the quota to the Calhoun County farm. Moreover, the district court based its ruling earlier in the litigation, in part, on a finding that appellants failed to exhaust available administrative remedies. *Shepard*, supra at 1150. This enumeration is without merit.

3. Appellants also contend the trial court erred in determining they stated no claims against FLB, the Popes and Adams Farms for tortious interference with contract and conversion. " ' "[I]n establishing a cause of action for malicious (or tortious) interference with business relations, a plaintiff . . . must demonstrate that the defendants . . . (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury." (Cits.)' [Cit.]" *Nationwide &c. Svc. v. Thompson Recruitment &c.*, 183 Ga. App. 678, 679-680 (1) (359 SE2d 737) (1987). FLB, in refusing to release its lien on the Calhoun County farm, is not "acting improperly and without privilege." Indeed, FLB has not acted at all and has no obligation to gratuitously release the lien and consent to a transfer. Nor is there an obligation that the Popes or Adams Farms consent to a transfer. To the contrary, it appears that appellants' efforts to obtain a transfer of the quota have been prevented by the applicable statutes and regulations governing transfer of quotas and appellants' ineffectual attempt with Hines to contractually effect a transfer within the law. Furthermore, we agree with the trial court that the ASCS determined that the quota was properly assigned to the Calhoun County farm and issued marketing cards to Adams Farms; therefore, the Popes and Adams Farms are entitled to the proceeds from the sale of peanuts under the quota and are not liable for tortious interference with contract or conversion. See *Shaw v. Hughes*, 199 Ga. App. 212 (4a) (404 SE2d 309) (1991).

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED JULY 14, 1992 —
RECONSIDERATION DENIED JULY 30, 1992 — 

*Greene, Buckley, Jones & McQueen, Ferdinand Buckley, John D. Jones, William D. Matthews*, for appellants.

*Kirbo & Kendrick, David A. Kendrick*, for appellees.