### H. WESTON LUMBER CO. v. LACEY LUMBER CO.

[85 South. 173.   In Banc. No. 21168.]

1. COVENANTS.   *Covenant of seizin is broken only by paramount title in a third party.*

   The covenant of seizin in a general warranty deed does not embrace a title already vested in the vendee, but only extends to and is broken only by a paramount title existing in a third party.

2. EVIDENCE.   *Terms of warranty deed cannot be added to or contradicted by contemporaneous oral agreement.*

   A written warranty deed is the sole evidence of the contract of purchase between the vendor and vendee, and cannot be contradicted or its terms added to by an alleged contemporaneous oral agreement.

   HOLDEN, J., dissenting.

APPEAL from chancery court of Hancock county.

HON. WM. DENNY, JR. *Chancellor.*

Suit by the Lacey Lumber Company against the H. Weston Lumber Company. Decree for plaintiff. and defendant appeals. Reversed, and decree entered for defendant.

*C. N. Hill* and *E. J. Bowers,* for appellant.

*Gen. Waller & Morse,* for appellee.

Stevens, J., delivered the opinion of the court.

Appellee, a corporation, exhibited its bill in equity against appellant, a corporation, to recover four thousand two hundred and thirty dollars, the purchase money for the lands described as the Southeast quarter of Southeast quarter of section 10, and West half of Southeast quarter, section 11, township 5, south of range 16 west; and in support of its claim alleged in substance, the following facts: That prior to March, 1912, one W. B. Harbeson was the owner of the lands; that Harbeson had conveyed to appellee, the Lacey Lumber Company, the right to cut and remove all of the merchantable pine timber; that the timber was to be manufactured at appellee's sawmill at Carriere, Miss.; that appellee had a tram or logging railroad over which the logs would be transported, and before appellee company was permitted to move and manufacture the timber the Poitevant & Favre Lumber Company, a corporation, claimed to be the owner of the lands, and in assertion of its claim the last-named company filed its bill of complaint against the said Harbeson and the Lacey Lumber Company in the chancery court of Pearl River County, seeking to confirm its (the complainant's) title, and enjoined Harbeson and Lacey Lumber Company, the defendants to said suit, from cutting and removing the timber; that the injunction was issued and served, and that the Lacey Lumber Company was thereby prevented from cutting the timber. the bill further alleges that the Lacey Lumber Company had practically cut out its standing timber in the territory in which the land was situated, and desired to remove the logging railroad, and that it was important that the timber be

cut and transported over the logging line then in existence, and that appellee could not well afford to wai¹ for a final determination of the suit theretofor instituted by Poitevant & Favre Lumber Company, it being emphasized that if said logging road was moved before the timber was cut there would be no sale for said timber,· and its value would practically be lost to appellee. It is then set forth in the bill that in order to avoid a violation of the injunction, and in order that it might be able to cut and remove the timber while the logging railroad was near the timber, it entered into negotations with appellant, the H. Weston Lumber Company, for the purchase of the same land and timber that was involved in the Poitevant & Favre suit. Complainant learned and knew that an agreement or contract had been made between the Poitevant & Favre Lumber Company and the H. Weston Lumber Company, whereby the former had sold and conveyed to the said H. Weston Lumber Company large holdings of timber and timbered land, including the lands hereinabove mentioned, but that the Poitevant & Favre Lumber Company had not conveyed to the H. Weston Lumber Company the particular lands here involved because of the fact that the title had been brought into question, and that suit was necessary to confirm the title and settle certain trespasses upon the land, but that the Poitevant & Favre Lumber Company had executed a written agreement to convey to the H. Weston Lumber Company when their title had been confirmed by the chancery court of Pearl River county. Knowing these facts, the bill charges that the appellee negotiated with the H. Weston Lumber Company, and agreed to pay four thousand two hundred and thirty dollars for the lands, but in doing so the bill charges that there was a special agreement or contract between appellee and the H. Weston Lumber Company that if appellee won its suit against the Poitevant & Favre Lumber Company, then

pending, appellant should refund the four thousand two hundred and thirty dollars and that if appellee lost the said suit appellant should retain the consideration thus agreed upon. It is further averred in the bill that aforesaid agreement about refunding the moneys under the conditions named was not incorporated in the warranty deed which appellant executed, and on that account appellee by its bill prayed that the said warranty deed be reformed so as to incorporate the said agreement It is further alleged that the Poitevant & Favre Lumber Company lost the said suit, and that on that account it became the duty of appellant to refund the money under said agreement. It is also alleged that there was no consideration, that the title which appellant conveyed had failed, and for that reason appellee was entitled to recover the consideration. A, demurrer to the bill having been overruled appellant answered, admitting the execution of the warranty deed in 1914 pending the litigation between the Poitevant & Favre Lumber Company and Harbeson and appellee, but denied any special agreement to refund the moneys, and further set up in the answer that appellee bought appellant's claim for the express purpose of cutting the timber, and before the title to the land had been adjudicated and thereby received exactly what it had bargained for, and denied liability altogether. The cause was set down for hearing on bill, answer, and testimony.

For the complainant Mr. Harbeson testified to facts set up in the bill, while Mr. Weston testified for the defendant, appellant here. The pleadings and decree rendered by the chancery court in the former litigation between Poitevant & Favre Lumber Company and appellee were introduced. The final decree reads as follows:

"This cause, coming on for final hearing at a special sitting of the court, as per previous order of the court, on bill of complaint and amendment thereto, answer, and amended answers, depositions, record evidence, and agreement of parties, and same having been fully argued

and presented to the court, was by the court, as per consent of all parties, taken under advisement, and now, having been fully considered by the court, the court being of the opinion that there is no merit in the bill of complaint and that as such it should be dismissed at the complainant's cost, it appearing that the title to the land embraced in said bill, or that is the south east quarter of south east quarter of section 10, and the west half of north west quarter of section 11, all in township 5 south, range 16 west Pearl River county, Miss., is in the respondent Lacey Lumber Company, as per title set up by it, and not in the said complainant, as per title hereby presented, and the court having been informed as to the proper amount of attorney fees to be allowed in this cause by way of damages, as suggested in its pleading or notice, the respondent withdrawing all of its demands for damages, with the exception of the item for attorney's fees, and it appearing to the satisfaction of the court, that the sum of five hundred dollars is a reasonable amount as attorney's fee in this cause:

"It is therefore the judgment of the court, and is ordered, adjudged, and decreed that the bill of complaint in this cause be, and the same is hereby, dismissed; that the titles set up to said land hereinabove described is in the said respondent Lacey Lumber Company as per the title by it pleaded, and it is further ordered, adjudged, and decreed that the injunction in this cause be, and the same is hereby, dismissed, set aside, and dissolved, and that the respondent do have and recover of and from complainant the sum of five hundred dollars, and all costs of this court, for all of which let execution issue.

"Ordered, adjudged, and decreed; this the 22d day of October, 1914."

The question of fact as to whether there was a special agreement not incorporated in the deed was a disputed question of fact, and the final decree now appealed from on this point has the following recital:

"The court is of the opinion that the reformation prayed for should be denied as a matter of law only."

It affirmatively appears that if there was any effort to reach a special agreement about refunding the consideration, it was a contemporaneous oral agreement in no wise referred to or incorporated in the written conveyance. The deed executed by appellant was the usual warranty deed.

We are led to the conclusion that upon the facts and applicable principles of law, the decree of the learned chancery court must be reversed. The record shows that Mr. Harbeson is the chief stockholder, managing officer, and dominant influence in the Lacey Lumber Company. He claimed title to the land, and had conveyed the timber rights to his codefendant, the Lacey Lumber Company. In this situation the Poitevant & Favre Lumber Company asserted title to the land and timber and filed its bill to confirm title. In this, the first suit reflected by the present record, both Harbeson and the Lacey Lumber Company were parties defendant. That suit was prosecuted to a successful termination and in this three-cornered fight over the title the court expressly decreed title in the Lacey Lumber Company. Among other recitals in the first decree is the following:

"It is therefore the judgment of the court and it is ordered, adjudged and decreed that the bill of complaint in this cause be and the same is hereby dismissed; that the title set up to said land here described is in the said defendant Lacey Lumber Company as per the title by it pleaded."

This decree, we think, is binding upon the parties and privies to that litigation. From that decree there was an appeal to the supreme court, and the cause was affirmed. The decree thus affirmed adjudicated the title in the Lacey Lumber Company, and this adjudication is binding upon all parties involved, either in the first or in the present litigation. Ever thereafter it estopped

Poitevant & Favre Lumber Company, Harbeson, and the Lacey Lumber Company from denying the truth of the recital, and, furthermore, it is binding upon Poitevant & Favre Lumber Company's vendee. The present litigation was instituted upon the very assumption that appellant's title through the Poitevant & Favre Lumber Company has failed, and failed because of the final decree to which we have adverted. In the case of *Lipscomb* v. *Postell,* 38 Miss. 476, 77 Am. Dec. 651, our court, by HARRIS, J., discussed rather elaborately the rule that judgments bind parties and privies, and, in discussing who are parties and who are privies, said:

"By 'parties,' in the sense here intended, all persons having a right to control the proceedings, to make defense, to adduce and cross-examine witnesses, and to appeal from the decision, where appeal lies, are included.

"By the term 'privies,' is meant those who stand in mutual or successive relationship to the same rights of property. And privies are distributed into several classes, according to the manner of this relationship. Thus there are privies in estate, as donor and donee, lessor and lessee, and joint tenants; privies in blood as heir and ancestor, and coparceners; privies in representation, as executor and testator, administrator, and intestate; privies in law, where the law, without privity of blood or estate, casts the land upon another, as by escheat. All these are more generally classed into privies in estate, privies in blood, and privies in law.

"The ground upon which judgments bind those in privity with the party against whom they are rendered is that they are identified in interest, by their mutual or successive relationship to the same rights of property involved in the litigation."

"The general meaning of privies includes those who claim under or in right of parties."

The only title which appellant ever claimed was through the complainant in the first suit. With knowledge of the fact that appellant held a written contract in the nature of a bond for title executed by Poitevant & Favre Lumber Company, appellee negotiated for such title as appellant held; and so it has developed that in buying from appellant, appelee was simply buying title to premises which it already owned. This, we think, makes applicable the general law cited by counsel for appellant that a party cannot buy title to his own land, accept a warranty deed with covenants of seizin, and then turn upon his grantor and allege that the covenants are broken because of the very fact that the purchaser himself is seized of the premises. *Fitch* v. *Baldwin,* 17 Johns. (N. Y.) 161, is a leading case, in which the court said:

"The allegation, that Baldwin has broken his covenant of seizin, by reason that Fitch owned the property when he purchased it, is repugnant to the direct acknowledgement in the act of receiving a title, or taking a conveyance from Baldwin. Paying a valuable consideration and accepting a deed from Baldwin restrains the bargainee from asserting that the bargainor was not seized of the premises, but that the bargainee was seized. The covenant of seizin extends only to guarantee the bargainee against any title existing in a third person, and which might defeat the estate granted."

The announcement of the New York court was subsequently quoted with approval, and the same doctrine announced in the case of *Horrigan* v. *Rice,* 39 Minn. 49, 38 N. W. 765, in which the court by Mitchell, J., said:

"Where at the time of the conveyance the purchaser has in himself the valid title to the premises, he cannot sue on the covenant it contains, for they only extend to a title existing in a third person, which may defeat the estate granted by the convenantor. They do not embrace

a title already vested in the covenantee. 'It never can be permitted to a person to accept a deed with covenants of seizin, and then turn round upon his grantor and allege that his covenant is broken, for that, at the time he accepted the deed, he himself was seized of the premises.' *Fitch* v. *Baldwin,* 17 John. 161; *Beebe* v. *Swartwout,* 3 Gilman, 162. 179; *Furness* v. *Williams,* 11 Ill. 229; Rawle, Cov., section 268; Bigelow, Estop. 346. This is decisive of the only point in the case. Had the plaintiff been induced through fraud to accept a deed of his own property, or had he done so in ignorance of the facts affectng his own rights, he might have been entitled to some form of relief. But no such suggestion is made, either in his pleadings or his proof. He predicates his right to recover solely upon the covenant of seizin.''

To the same effect, *Furness* v. *Williams,* 11 Ill. 229, in which the court uses this expression: ''The law does not allow this to be done. The covenant of seizin only extends to a title existing in a third person, which may defeat the estate granted by the covenantor. It does not embrace a title that may already be in the grantee. The grantee is estopped from setting up the title previously acquired against his vendor.''

To these authorities may be added Rawle on Covenants of Title (5th Ed.), section 268; *Harris & Mitchell* v. *Amoskeag Lbr. Co.,* 101 Ga. 641, 29 S. E. 302; 15 C. J. par. 137, p. 1282. It should be particularly noted that there is not the slightest element of fraud, ignorance, or oppression. Appellee was induced to negotiate with appellant, it seems, chiefly because of the necessity to cut the timber pending litigation, and it negotiated with appellant with full knowledge of all the facts, and especially with full knowledge of the exact claim which both appellant and appellee had or possessed to the premises in dispute.

The bill in the present suit appears to be predicated upon two theories: First, the right of appellee to recover under the alleged special oral agreement whereby the consideration in the deed was to be refunded in event appellee won its suit with appellant's vendor; secondly, the right to recover as upon a breach of the covenants contained in the deed. The written contract between the parties is the sole evidence of the agreement. This fact is evidently appreciated by the pleader· who drafted the bill and prayed for a reformation of the deed. But there is no proof of any mutual mistake, or such facts and circumstances as entitled appellee to any reformation. Appellee must stand upon its rights as given by the general warranty deed, and since the covenant of warranty extends only to a title existing in a third person, it has not been breached by the title already vested in and adjudicated to be in appellee. No prior adjudication of this court on this particular law point has been brought to our attention, but the law appears to be well settled, and altogether one way. The decree of the learned chancery court will be reversed, and decree entered here for appellant.

                *Reversed, and decree here for appellant.*

HOLDEN, J., dissenting.