United States Court of Appeals,

Fifth Circuit.

No. 91–5641

Summary Calendar.

Jesse M. LINDSEY and Louise O. Lindsey, Plaintiffs–Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of MBank Alamo, N.A. and Ricky Preston, Defendants–Appellees.

May 15, 1992.

Appeal from the United States District Court for the Western District of Texas.

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal is over peanuts.

The Lindseys brought suit in state court against MBank Alamo seeking a declaratory judgment that they are the owners of a peanut allotment. The FDIC was appointed receiver of MBank and removed the case to federal district court. The district court granted the FDIC's motion for summary judgment on the grounds that ownership of the allotment passed to MBank when MBank foreclosed on the land upon which the allotment was in effect. The district court also held that the Lindseys' claim that they reserved ownership of the allotment was barred by *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and 12 U.S.C. 1823(e).

We agree that ownership of the allotment did pass to MBank upon foreclosure of the entire parcel of land upon which the allotment was in effect. We further hold that the Lindseys' unilateral oral reservation of ownership at the time of foreclosure is insufficient: they did not prove that MBank agreed to any reservation, either upon execution of the mortgage or upon foreclosure.[1] We therefore

[1]The Lindseys would argue that, because they owned the allotment as well as the land, they could unilaterally reserve the allotment when granting a deed of trust on the land. We agree they

affirm the order of the district court granting the FDIC's motion for summary judgment.


## I

Jesse and Louis Lindsey originally brought this action against MBank in state court. MBank was declared insolvent and the FDIC was appointed receiver of MBank's assets. The FDIC removed the case to federal district court and moved for summary judgment. The Lindseys responded and the FDIC replied. Thereafter, a pretrial conference was held and summary judgment was granted in favor of the FDIC.


## II

Jesse Lindsey is a peanut farmer. In 1980, the Lindseys signed a $345,000 promissory note in favor of San Antonio Bank and Trust. The note was secured by a deed of trust to approximately 516 acres of cropland. The deed of trust did not refer to the peanut allotment on the land; nor did the Lindseys in any other manner, either orally or in writing, reserve ownership in the allotment at the time of their granting this security interest in their croplands. Sometime later, San Antonio Bank and Trust transferred its interest in the note and the deed of trust to MBank.

The Lindseys defaulted on the note and filed for bankruptcy protection to prevent foreclosure on the land. In January 1986, the Lindseys and MBank entered into a letter agreement—the Lindseys agreed to a lift of the automatic stay so that MBank could foreclose on the land and the bank agreed to lease the property back to the Lindseys for the following crop year. Neither the letter agreement nor the order lifting the stay mentions the peanut allotment. The Lindseys contend, however, that at this time they orally made clear their intention to retain ownership of the allotment.

certainly could propose reserving it, but upon such a timely proposal, the bank would have the opportunity to refuse to loan the money under such a condition. As we discuss later in this opinion, once the mortgage was granted, however, the Lindseys could not then diminish the bank's security by unilaterally reserving the allotment from foreclosure without the bank's agreement. Moreover, the transferability of the allotment from the land on which it is granted depends also on government approval.

In 1987, after the lease expired, MBank, presumably with permission of the government, transferred part of the peanut allotment to two other people and the rest of the allotment was used by Ricky Preston.

III

On appeal, the Lindseys argue that the district court erred in granting summary judgment in favor of the FDIC because, they contend, the peanut allotment is intangible personal property, and consequently the title was not passed to MBank when the farmland was conveyed. Therefore, the allotment was not an asset to which the FDIC acquired a right. They further argue that, assuming that the allotment was attached to the land, their oral reservation was sufficient to retain ownership apart from the land. They also argue that their claim to the allotment based on that oral reservation is not barred by *D'Oench, Duhme* or 12 U.S.C. § 1823(e) because the title to the allotment was never conveyed to MBank in the first place.[2] Alternatively, the Lindseys argue that even if the allotment did pass to MBank, MBank knew the Lindseys did not intend to convey the allotment. Therefore, they argue that MBank committed real fraud, or fraud in the factum, a defense not barred by *D'Oench, Duhme* or § 1823(e).

---

[2]In *D'Oench, Duhme,* the Supreme Court held that a borrower cannot assert defenses against the FDIC that are based on unrecorded agreements with a failed bank. *D'Oench, Duhme,* 315 U.S. at 459–60, 62 S.Ct. at 680–81. 12 U.S.C. § 1823(e) provides in pertinent part:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it ... shall be valid against the [FDIC] unless such agreement—
>
> (1) is in writing,
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (4) has been, continuously, from the time of its execution, an official record of the depository institution.

The FDIC argues that the district court correctly found that the peanut allotment passed to MBank upon foreclosure because the Lindseys failed to make an express written reservation. The FDIC further argues that the district court correctly found that the Lindseys' argument that they made an oral reservation of the allotment is barred by *D'Oench, Duhme* and § 1823(e).

IV

Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The granting of a summary judgment motion is reviewed by this court *de novo. Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988).

V

The Agricultural Adjustment Act of 1938[3] controls the price of peanuts through a national program that limits the amount of peanuts available on the market. Pursuant to the Act, individual farms are assigned an annual allotment under which the farmers are allowed to grow an annual quota of peanuts. The peanuts grown on the allotted acres, "quota peanuts," are more valuable because they can be used in food products, whereas "non-quota peanuts" can be used only for export or domestic peanut oil. *Federal Land Bank v. Shepard,* 646 F.Supp. 1145, 1146 (M.D.Ga.1986).

The Lindseys argue that MBank did not become the owner of the allotment upon foreclosure of the land for two reasons. First, they argue that *Combustion Engineering* does not govern the instant case because the Lindseys did not sell their entire farm. Second, the Lindseys contend that they made an oral express reservation of the allotment.

In concluding that the peanut allotment passed to MBank, the district court relied on

---

[3] 7 U.S.C. §§ 1281–1393.

*Combustion Engineering, Inc. v. Norris,* 246 Ga. 413, 271 S.E.2d 813 (1980). There, the court held

that the general rule is:

> "If there is a transfer of ownership ... (and) a transferee ... acquires an entire farm, he necessarily receives the farm's allotments, and if he acquires only part of the farm, the running of the allotments is generally controlled by law rather than by the intent of the parties." [citation omitted] Based on this rule, if an entire farm is sold, the acreage allotments pass with the farm; unless such allotments are specifically reserved by the seller.

*Id.* at 815. In its pleading, the FDIC alleged that MBank foreclosed on the entire 516 acres on which

the peanut allotment was in effect, and that under *Combustion Engineering,* as transferee of the entire

516 acres, it acquired the peanut allotment with the farmland. We agree.

Because the allotment runs with the land when a transfer involves the entire parcel upon which

the allotment is in effect, and because MBank took a security interest in the 516 acres of cropland

upon which the allotment was in effect, it follows that MBank's security interest includes the

allotment. Although there are various regulations, some complex, that allows the allotments to be

temporarily or permanently shifted to other parcels of farmland, such allotment transfers can only be

accomplished after receiving approval by the government. Here, at the time that the Lindseys gave

a security interest in the farmland to the bank, the allotment was attached the farmland and had not

been transferred; neither did the Lindseys reserve the allotment from the deed of trust. Thus, the

allotment gave substantial value to the farmland and consequently to the security interest to which

the bank and the Lindseys agreed. To subsequently withdraw t he allotment without the bank's

agreement would impermissibly impair the bank's secured interest; indeed any disposition of the

allotment by the Lindseys without the bank's agreement would be akin to the unlawful conversion or

sale of a mortgaged property. This conclusion is supported by a provision in the Act that requires

a mortgagee's or lienholder's written permission before a peanut allotment on the mortgaged land may

be transferred to another farm. 7 U.S.C. § 1358a(b)(2); 7 C.F.R. § 729.351. This provision is

obviously designed to protect the mortgagee's or lienholder's security interest in the allotment. When

MBank foreclosed on the land, it became owner in fee simple of the land and we conclude, it also

became owner of the allotment that was necessarily included in the deed of trust.

The Lindseys argue that MBank did not become the owner of the allotment upon foreclosure because they did not sell their entire farm as required by *Combustion Engineering*.[4] The rule established by *Combustion Engineering,* however, is not that the allotment runs with the land only when the farmer transfers or sells all of his farmland; it is that the allotment runs with the land when a farmer transfers or sells all of the land "upon which an agricultural allotment is in effect." *Id.* The Lindseys did not argue below and do not argue on appeal that the 516 acres is not the entire parcel of land upon which the allotment is in effect. Therefore, the Lindseys' argument that *Combustion Engineering* is inapplicable to this case because they did not sell all of their land has no merit.

The Lindseys also argue that MBank did not acquire the allotment upon foreclosure because they made an oral reservation of the allotment. As evidence of the reservation, the Lindseys submitted affidavit testimony of Mr. Lindsey and Mr. Barham, their attorney, that the Lindseys announced their intention to retain ownership of the allotment at a conference after the bankruptcy court hearing regarding the automatic stay. In their affidavits, both Lindsey and Barham state that a paragraph in the lease agreement evidences the Bank's acquiescence to the Lindseys' intention to retain ownership of the allotment. The paragraph provides that "the lessee shall provide, without cost to the Lessor, the necessary "quota pounds' for marketing lessor's share of the peanuts."[5] They argue that this provision would have been unnecessary if the allotment had passed to MBank upon foreclosure. We cannot agree. The provision in the lease is not evidence that MBank had agreed that the Lindseys retain permanent ownership of the allotment at the foreclosure. Instead, to us it

---

[4]When the "entire farm" is not sold or transferred, the allotment does not automatically run with the land, because questions arise as to how to assign portions of the allotment to the parcel of the farm that is sold or transferred.

[5]As payment for leasing the cropland back from MBank, the Lindseys were obligated to give MBank a percentage of the peanuts. Apparently, the quoted lease provision provides that the Lindseys would provide MBank with enough quota pounds so that it could sell its peanuts at the higher price.

indicates only that the bank associated the allotment to the land it had leased to the Lindseys.

Because MBank had a security interest in the allotment, the Lindseys must prove more than that they asserted their intention, upon foreclosure, to retain ownership of the allotment; they must prove that MBank agreed to surrender its security interest in the allotment and allow them to retain ownership it. They have failed to do so. The district court, therefore, correctly held that upon foreclosure, MBank became owner of the land and the allotment.[6]

## VI

Alternatively, the Lindseys argue that even if title did pass to MBank upon foreclosure, MBank was aware that the Lindseys did not intend to convey the allotment, and therefore, MBank committed real fraud, or fraud in the factum. The Lindseys did not raise this claim below. This Court will not address an issue raised for the first time on appeal unless it is a purely legal issue and our refusal to consider it would result in a miscarriage of justice. *Aguirre v. Armstrong World Industries, Inc.,* 901 F.2d 1256, 1258 (5th Cir.1990); *Matter of HECI Exploration Co.,* 862 F.2d 513, 518 n. 7 (5th Cir.1988).

## VII

In conclusion, we hold that ownership of the allotment did pass to MBank when it foreclosed on the entire parcel of land upon which the allotment was in effect. The Lindseys presented no evidence that MBank agreed to let them retain ownership of the allotment upon foreclosure. Therefore, the district court's order granting the FDIC's summary judgment motion is

AFFIRMED.

---

[6]MBank's argument that the Lindseys did not make a written reservation of the allotment raises the question whether the Texas Statute of Frauds applies to the reservation of allotments. Because we decide that MBank never agreed to any reservation, we do not reach the question of whether the reservation must be writing.