**In re Wade JACKSON, Debtor.**

**Bankruptcy No. 93–02222.**

United States Bankruptcy Court,
N.D. Florida,
Panama City Division.

June 17, 1994.

Charles Wynn, Marianna, FL, for Shelley.

Doug Smith, Panama City, FL, for debtor.

William Miller, Trustee, Tallahassee, FL.

### ORDER ON OBJECTION
### TO EXEMPTIONS

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER is before the court on Motions for Summary Judgment filed by the debtor, and by the Trustee and Genola Shelly, a judgment creditor (collectively the "Objectors") with respect to objections to the debtor's homestead exemption claim. The debtor also claims a peanut quota as exempt, to which objections have been filed. Having considered the pleadings, supporting documents, and argument of counsel, I find that there are no genuine issues of material fact and that the debtor is entitled to judgment as a matter of law with respect to his homestead exemption claim and that the Objectors are entitled to judgment with respect to the peanut quota issue.

### HOMESTEAD

On July 15, 1993, Wade Jackson filed a petition for relief under Chapter 7 of the Bankruptcy Code. In his schedules, the debtor claimed as exempt two adjoining tracts of farmland consisting of 140 acres [1] in Washington County, Florida (the "County"). A graded roadway passes through the 120–acre tract, bifurcating the debtor's claimed homestead into two distinct parcels: the 80 acres on which debtor's residence is located (comprised of the 20–acre tract plus half of the 120–acre tract), and the remaining 60 acres of farmland.

According to the uncontroverted affidavit of a 78–year resident of the County, the roadway was originally a "three trail path" created by passing carriages and maintained by the people who resided alongside it. The County subsequently graded the path, and has maintained . the roadway since then. Public records do not reflect either the existence or ownership of the roadway.

Under the Florida homestead exemption provision, Fla. Constitution, Art. X, § 4, the debtor is entitled to claim a homestead exemption of a maximum of 160 acres of contiguous land located outside of a municipality. The Objectors assert that the road running through the debtor's property destroys the contiguity with respect to the 60 acres, and that the debtor should be allowed an exemption only as to the 80 acres on which his house is located. Both parties agree that the debtor meets all other requirements for the homestead exemption, and that absent the presence of the roadway, the debtor would be entitled to claim the entire 140 acres as exempt under Florida Law.

### DISCUSSION

██ Summary judgment motion is to be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 7056, Fed.R.Bankr.P. The Court must view the evidence in the light most favorable to the party opposing summary judgment. *American Management Corp. v. Dunlap*, 784 F.Supp. 1245, 1250 (N.D.Miss.1992); *Savage v. Snow*, 575 F.Supp. 828, 832 (S.D.N.Y. 1983). Under Bankruptcy Rule 4003(c), a party objecting to an exemption bears the burden of proving that the exemption is not properly claimed.

██ Bankruptcy exemptions for Florida residents are governed by Florida law. Bankruptcy Code § 522(b); Fla.Stat. § 222.20 (Florida opts out of federal exemption scheme). The Florida homestead provision exempts from forced sale, judgment, or lien any property which consists of a person's homestead to the extent of 160 acres of contiguous land outside of a municipality. Fla.

---

1. The 140–acre parcel consists of a 120–acre tract and a 20–acre tract, both owned in fee simple by the Debtor. The 120–acre tract was transferred to the Debtor on September 29, 1966, and the 20–acre tract was conveyed to him on March 31, 1972.

Const., Art. X, § 4. Florida courts hold that the homestead exemption shall be liberally construed "in the interest of protecting the family home." *In re Israel,* 94 B.R. 729, 730 (Bankr.N.D.Fla.1988) (citing *Quigley v. Kennedy & Ely Insurance, Inc.,* 207 So.2d 431 (Fla.1968)).

■ It is undisputed that (i) the house located on the land is the debtor's residence; (ii) the property is farmland located outside of a municipality; and (iii) the 140 acres falls within the constitutional limitation of 160 acres. The sole issue with regard to the claimed homestead land concerns whether a public road bisecting a debtor's property destroys the contiguity requirement of the homestead exemption.

In *Clark v. Cox,* 80 Fla. 63, 85 So. 173 (1920), the Florida Supreme Court indicated that contiguity is destroyed where the fee title to a right of way is vested in someone other than the owner of the adjoining lands. In *Clark,* the owner of the homestead had conveyed by deed a 100–foot strip of land for a railroad right of way. The owner enjoyed free passage over the right of way and continued to own and use the land on both sides for "homestead purposes." *Id.,* 85 So. at 175. Prior to 1968, the Constitution did not expressly require contiguity of land for the exemption of a homestead:

> "*A homestead to the extent of one hundred and sixty acres of land ... owned by the head of a family residing in this State ... shall be exempt from forced sale....*"

Fla. Const., Art. X, § 1 (1885) (amended by Fla. Const. Art. X., § 4 (1968), adding requirement of contiguity). Nevertheless, the *Clark* court determined that an element of contiguity was requisite to the homestead character of land. "[A] detached tract of land separated from the homestead by other parcels of land 'neither owned nor occupied by' " the debtor may not be considered part of the homestead. *Clark,* 85 So. at 174 (quoting *Brandies v. Perry,* 39 Fla. 172, 22 So. 268, 270 (1897)); *Buckels v. Tomer,* 78 So.2d 861 (Fla.1955). If adjoining lands are separated by a perpetual easement, however, and fee title to the underlying land remains in the homesteader, this does not "destroy the actual contiguity or impair the homestead exemp-

tions." *Clark,* 85 So. at 174; *see also Di Virgilio v. State Rd. Dep't,* 205 So.2d 317, 320 (Fla. 4th DCA 1968) (holding that easement does not destroy contiguity when fee remains in condemnee and separate portions are not used differently).

Since a mere easement does not destroy actual contiguity, it follows that conveyance of a fee title does destroy actual contiguity because the homestead would thus be separated by land not owned by the homesteader. Therefore, a fee simple roadway running through and bisecting a landowner's property creates two separate tracts and destroys the contiguity of the homestead.

The *Clark* court further held that since contiguity was not *expressly* required by the Constitution, the question of whether *actual contiguity* was required in each case had to be determined by the particular facts of the case. *Clark,* 85 So. at 174. The court found that under the narrow facts of this case, there was no evidence that the homestead owner abandoned his right to claim any part of the remaining land as a homestead, and that conveyance of the land for a right-of-way did not deprive the remaining real estate of its homestead character. In an equitable decision not to penalize the homeowner through loss of homestead protection on his remaining property, the court held that actual contiguity was not required "under the circumstances of this case." *Id.* at 175.

The present case is governed by the 1968 revisions to the Constitution, under which the revised homestead provision, Art. X, § 4, now expressly requires contiguity of land. "[T]he following property owned by a natural person" is exempt from forced sale:

> "*[A] homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon....*"

Fla. Const., Art. X, § 4 (amended 1984, substituting "a natural person" for "the head of a family") (emphasis added). Courts no longer have the discretion to review, on a case-by-case basis, whether actual contiguity is required. If the facts support a finding that someone other than the debtor owns fee title to the land beneath the roadway, then

the requisite contiguity is destroyed, and the debtor is not entitled to claim as part of his homestead a tract of land detached from that on which he resides.

■ The debtor seeks to prove that the County does not own fee title to the land beneath the roadway. He asserts that since the County neither owns the land nor seeks to assert any claim of title to the land, fee title belongs to him. Regardless of the County's intentions, however, the land may have been dedicated to the County by common law or statutory dedication. *See City of Miami v. Jansik,* 89 So.2d 644 (Fla.1956) (holding that dedication need not be done by formal act but may be done by permissive conduct of dedicator). Common law dedication, by which an owner of an interest in land transfers either ownership or privileges for public usage, requires both an intention to dedicate and an acceptance of the offer of dedication. *Bonifay v. Dickson,* 459 So.2d 1089 (Fla. 1st DCA 1984). "An intention to dedicate may be implied from the acts of the landowner," such as the filing of a map or plat of the property indicating thereon the roadway or public land at issue. *Id.* at 1094. One significant feature of common law dedication is that it "leaves ownership of the land in the dedicator, giving to the public rights of easement only." *Id.* at 1095 (e.g., abutting lot owners own fee title to middle of dedicated street). Nothing in the record evidences the debtor's or any of his predecessors in interest express intention to dedicate the roadway, and no map or plat has been filed showing the existence of the roadway from which an intention to dedicate might be implied. Therefore, there has been no common law dedication of the roadway.

■ The public may also acquire a prescriptive right to use the land as a roadway if there is "actual, continuous, uninterrupted use by the [public] of the lands of another, for [the] prescribed period" of twenty years. *Downing v. Bird,* 100 So.2d 57, 64 (Fla.1958); *Gibson v. Buice,* 394 So.2d 451, 452 (Fla. 5th DCA 1981). The use must be (i) "adverse under claim of right," (ii) "inconsistent with the owner's use and enjoyment of his lands," and (iii) either "with the knowledge of the owner or so open, notorious, and visible that knowledge of the use by and adverse claim of the claimant is imputed to the owner." *Downing,* 100 So.2d at 64. If the roadway is a prescriptive easement, the debtor retains fee title to the underlying land, and the contiguity of his homestead is not destroyed. *Clark, supra; see also Di Virgilio, supra.*

■ Adverse possession, another method by which the public may acquire a right in property, has the same essentials as prescription but differs in two significant respects. First, acquiring title by adverse possession requires "possession," while in acquiring a prescriptive right this element is use of the privilege, without actual "possession." *Downing,* 100 So.2d at 65. Second, "to acquire title the possession must be exclusive, while with a prescriptive right the use may be in common with the owner, or the public." *Id.; see also Gibson,* 394 So.2d at 452 (holding that use in common with owner is presumed subordinate to owner's title and with owner's permission).

■ The Objectors do not claim that title was transferred to the County by adverse possession. They urge that fee title to the land under the roadway was transferred to the County by statutory dedication pursuant to § 95.361, Fla.Stat., and that contiguity is thereby destroyed. Statutory dedication under § 95.361 (and its predecessor § 341.66) vests fee title to a dedicated road if the conditions of the statute are strictly met. *Madden v. Florala Tel. Co.,* 362 So.2d 475, 477 (Fla. 1st DCA 1978). Section 95.361, the "Presumed Dedication Statute," provides in pertinent part that if a road is (i) constructed by a county and (ii) maintained by the county continuously and uninterruptedly for four years, then the road is presumed "dedicated to the public" and "[t]he dedication shall vest all right, title, easement, and appurtenance in and to the road in ... the county." Fla.Stat. § 95.361(1)(a). The parties do not dispute that the County has maintained the road continuously and uninterruptedly for four years. The dispute centers on whether the County constructed the road.

■ The Objectors bear the burden of proving that the County meets the requirements of the statute. Bankruptcy Rule

4003(c). Moreover, under state law a party asserting statutory dedication of a road to a county bears the burden of proving the county's construction and maintenance of the road. *Downing,* 100 So.2d at 61. Florida courts hold that the requirements of § 95.361 must be strictly met. *St. Joe Paper Co. v. St. Johns County,* 383 So.2d 915, 917 (Fla. 5th DCA 1980) (explaining that presumption in favor of public deprives legal title owner of his property within relatively short time period only if requirements of statute are strictly met). If the Objectors can prove that § 95.361 applies, then fee title passes to the County and contiguity of the claimed homestead is destroyed. If the Objectors cannot carry their burden of proving compliance with the statute, then § 95.361 does not apply.

In *Downing,* a property owner sought an injunction requiring the City to remove an asphalt road which she claimed was a continuing trespass on her land. The City's affirmative defenses were (i) that the public had acquired, by adverse possession, an easement for use of the roadway; or (ii) that the City had constructed the street and maintained it continuously and uninterruptedly for more than four years prior to the institution of the suit, and thus had acquired title to the land under § 341.66. As in the present case, no map was filed which could establish prima facie evidence of title to the roadway.[2]

The Court held, however, that the filing of a map is not the only way to determine ownership. *Id.* at 61. The City could also prove ownership by statutory dedication if they could meet the requirements of § 341.66. The City was unable to meet its burden of proving construction of the road, though, because none of the City's witnesses could recall who actually had paved the road, described as originally just "a little rock road." *Id.* at 62. The Court then discussed the City's final claim, that of adverse possession, and found that the evidence was too vague and uncertain to conclude either (i) that the public had used the property for twenty years inconsistent with the rights of the owner, or (ii) that the possession was exclusive as required to acquire title under adverse possession.

■■■■ Since there is no claim of adverse possession in this case, the County's only claim to title is by statutory dedication under § 95.361. Similar to the facts of *Downing,* the debtor asserts that the County cannot satisfy the construction requirement of § 95.-361. As proof that the County did not construct the road, the debtor offered the affidavit of Willie Tharp, a 78–year resident of Washington County, who swears that the road was originally a "three trail path" that was later improved and maintained by the people who lived alongside the roadway. Tharp states that the County came along much later and merely graded the already existing roadway. Tharp's affidavit remains uncontradicted.

The Objectors attempt to refute the debtor's contention by offering copies of transcripts of County Commission meetings held in 1926 and 1927, in which the Commissioners purportedly agreed to contract with one W. Gilbert to build the road across the debtor's property. Objectors presented no evidence to prove that the road described in the minutes of the Commission meetings is the road that bisects debtor's property. Additionally, the minutes do not reveal any specific actions performed on the roadway that would constitute "construction" by the County. The County's smoothing of a pre-existing three trail road with a grader does not constitute "construction," and therefore fails to satisfy the strict requirements of § 95.361.

Furthermore, there is nothing in the records to indicate that construction of the road by the County was ever completed. In fact, the minutes appear to be more contradictory than conclusive, citing payments to both C.F. Gilbert and W.L. Gilbert for road construction, and at one point mentioning a county convict crew being sent out to work on the

**2.** Section 341.66 provided that "the filing of a map showing the lands and reciting that they have vested in the municipality, ... 'shall be taken as prima facie evidence of the ownership of such lands ... by the ... municipality.' " *Id.* 100 So.2d at 61, *citing* Laws 1951, c. 26547 (repealed 1955). The map that the City offered as evidence of its title failed to recite that title to the specific roadway had vested in the City, and thus did not establish prima facie evidence of title in the City.

road. Absent any evidence of actual work done to the road or of the road's completion, the Court finds that the minutes of the County Commission Meetings, standing alone, are insufficient to prove that the County constructed the road at issue. Therefore, § 95.-361, Fla.Stat. does not apply.

I find that the facts establish that the road is a prescriptive easement created for public use. The public used the roadway continuously and uninterruptedly for at least twenty years. The use was open and notorious; it was adverse under claim of right; and it was inconsistent with the debtor's use and enjoyment of his land. The public used the privilege to travel on the roadway in common with the debtor, therefore there was no exclusivity and there can be no claim to adverse possession.

Since the road is a prescriptive easement created for public use, fee title to the land under the roadway rests in the debtor, and the claimed homestead property is contiguous. The entire 140–acre tract is, therefore, exempt.

### PEANUT QUOTA

■ Included in the objection to the exemptions filed by the Objectors is an objection to the exempt status of the 12,000 pounds of peanut quota allotment assigned to the debtor's farm. While the peanut quota was not specifically listed as exempt property by the debtor, he has taken the position in these proceedings that the peanut quota is part of the realty and is therefore entitled to the same homestead protection as the real property itself. For the reasons set forth below, I find that the peanut quota is not part of the real property and is therefore not entitled to the protection of the homestead exemption laws.

Peanut quota allotments are given to farmers by the federal government pursuant to the Agricultural Adjustment Act of 1938, 7 U.S.C. §§ 1281–1393. This law controls the price of peanuts grown in the United States for food products by limiting the amount of peanuts available on the market. The program provides guaranteed price supports for the limited number of peanuts in order to provide peanut farmers with income protection and consumers with consistent prices. *Calloway v. Block*, 763 F.2d 1283, 1285 (11th Cir.1985). Under the program, individual farms are assigned an annual quota allotment which permits those farmers to grow a certain quantity of peanuts known as "quota peanuts" for which the farmer receives a guaranteed price. Allotments to individual farms are based primarily on the peanut production history of the farm. However, the quotas can be changed from year to year depending on the allocation of poundage quota to the state in which the farm is located. 7 C.F.R. § 729.204.

While peanut quotas are assigned to individual farms, the quota may be transferred from one eligible farm to another or between separately owned tracts within a single farm, either by sale or by lease. 7 C.F.R. § 729.-212.

■ As previously noted herein, the homestead exemption for rural real estate in Florida extends to "160 acres of contiguous *land* and *improvements thereon*" (emphasis supplied). We must first consider whether the allotment constitutes an improvement to the debtor's farm. *Black's Law Dictionary* defines improvement as follows:

> *Improvement. A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt for new or further purposes. Generally, buildings, but may also include any permanent structure or other development, such as street, sidewalks, sewers, utilities, etc. An expenditure to extend the useful life of an asset or to improve its performance over that other original asset. Such expenditures are capitalized as part of the assets' costs.*

From the foregoing definition, it is clear to me that improvements to real property are limited to physical additions or alterations to that property and do not include intangibles such as the peanut allotments in question here.

The debtors, in arguing that the peanut allotment is a part of the realty, rely primari-

ly on *Lindsey v. Federal Deposit Insurance Corporation,* 960 F.2d 567 (5th Cir.1992). That case considered the issue of whether the conveyance of an entire farm upon which there is a peanut allotment without specific reservation for that allotment also conveys the allotment. The 5th Circuit held that the allotment did pass with the farm, relying on the general rule as set forth in *Combustion Engineering, Inc. v. Norris,* 246 Ga. 413, 271 S.E.2d 813 (1980). The rule as set forth in *Combustion Engineering* is:

> "If there is a transfer of ownership ... (and) a transferee ... acquires an entire farm, he necessarily receives the farm's allotments, and if he acquires only part of the farm, the running of the allotments is generally controlled by law rather than by the intent of the parties." [citation omitted]. Based on this rule, if an entire farm is sold, the acreage allotments passed with the farm; unless such allotments are specifically reserved by the seller.

*Id.* at 815. In discussing the nature of agricultural allotments, the Georgia court in Footnote 2 stated:

> fn 2. Based upon the statutory provisions for transfer of allotments, and not upon the statutes relating to sales of tracts of farmland discussed above, courts have stated that an allotment is a type of intangible personal property. Walker v. Miller, (Tex.Civ.A.P.) 507 S.W.2nd 606 (1974). However, allotments cannot be considered as ordinary intangible property in isolation from the statutes and regulations which control their transfer. Conifer Farms, supra [237 Ga. 42, 226 S.E.2d 585]; Allen v. David 334 F.2d 592 (5th Cir.1964); Thomas v. County Office Committee of Cameron County, 327 F.Supp. 1244 (S.D.Tex 1971). Thus, the allotment may assume different characteristics under traditional property law notions depending upon the type of property transaction involved in the case. For example, when an entire farm is sold the allotment is said to run with the land and past to the purchaser. McClung, supra [401 F.2d 253]. But when a farmer transfers an allotment to leased farmland which he is working, the allotment does not necessarily become attached to the lease land. Walker, supra.

Thus, peanut allotments can be said to be either intangible personal property or property which runs with land, depending on the circumstances and based on the statutory provisions.

The 11th Circuit in *Calloway v. Block, supra,* held that peanut quota allotments and the entitlement thereto are created and defined by federal regulations and that "the dimensions of a protected property interest are defined by the law that creates it." 763 F.2d at 1290. The farmers in that case did not have a protected property interest in the peanut allotment quotas which would give rise to the protections afforded by the 5th Amendment when the government sought to reduce their quota allotments.

While it is established that peanut allotment quotas by law run with the real property to which those quotas are allocated, I do not believe that this necessarily makes such allotments a part of the real estate or improvements thereon so as to bring them under the protection afforded homesteads under the Florida Constitution. Peanut allotments are a benefit created by the federal government and can be taken away by the same government which created them. They can be freely sold or leased, subject to compliance with the regulations which govern them.

Accordingly, I find that the peanut allotment quota assigned to the debtor's farm is not encompassed in the constitutional definition of homestead and is therefore not protected by the homestead exemption.

### CONCLUSION

The Court finds that there are no disputed issues of material fact and debtor is entitled to judgment as a matter of law with respect to the homestead exemption claim and the Trustee and Genola Shelly are entitled to judgment as a matter of law with respect to the peanut quota. Accordingly, it is

ORDERED AND ADJUDGED that the objection to the debtor's claim of exemption to the 140 acre farm be and same is hereby DENIED and the exemption is allowed with respect to the entire farm; it is further

ORDERED AND ADJUDGED that the objection with respect to the debtor's claim that the 12,000 pounds of peanut allotment assigned to his farm is exempt is SUSTAINED and the exemption is disallowed as to the peanut allotment.

DONE AND ORDERED.